COMMONWEALTH *vs.* ROGER A. GIRARD
(and nine companion cases).

Bristol. April 6, 1970. — June 25, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Obscenity. Pleading, Criminal,* Indictment or complaint. *Constitutional Law,* Freedom of speech and press.

An indictment under G. L. c. 272, § 28A, as appearing in St. 1959, c. 492, § 2, failing to allege the essential element of scienter was defective, and a conviction thereunder must be set aside. [35]

The First Amendment of the Federal Constitution invalidates the provision of G. L. c. 272, § 30, as appearing in St. 1956, c. 724, § 1, that in a prosecution thereunder it is unnecessary to prove scienter as an element of the offence; and a conviction upon an indictment under § 30 must be set aside. [35-36]

TEN INDICTMENTS found and returned in the Superior Court on June 4, 1968.

The cases were reported by *Hennessey, J.*

*Leonard A. Kamaras,* of Rhode Island (*John M. Xifaras* with him) for the defendants.

*Ernest I. Rotenberg,* Assistant District Attorney, for the Commonwealth, submitted a brief.

SPALDING, J. The defendants were convicted for violations of G. L. c. 272, § 28A (as appearing in St. 1959, c. 492, § 2)[1] and § 30 (as appearing in St. 1956, c. 724, § 1)[2] for the sale, display, and possession with intent to sell of certain magazines alleged to be obscene. The cases were tried without a jury and findings of guilty entered. The judge, being of opinion that the cases involved questions of law of such importance and doubt as to require the decision of this court, reported them, the defendants consenting. G. L. c. 278, § 30.

The relevant facts may be summarized from the report as follows. Magazine World and Literature, Inc. are two stores located in New Bedford selling a variety of magazines and other items. The defendant Saba owned and operated Magazine World, and employed the defendant Dupont as a sales clerk. The defendant Girard was the manager of Literature, Inc., in which the defendants St. James and Grenier were employees. The materials in question were on open racks toward the rear of the store,

---

[1] "Whoever . . . sells or distributes a pamphlet . . . printed paper, . . . or other thing which is obscene, indecent or impure, or an obscene, indecent or impure print, picture, figure, image or description . . . or has in his possession any such pamphlet . . . printed paper . . . obscene, indecent or impure print, picture, figure, image or other thing, for the purpose of sale, exhibition, loan or circulation . . . ."

[2] "Whoever sells, rents, *displays for sale,* loans, gives or distributes to a child under eighteen years of age or offers for sale to such a child any pamphlet, magazine, comic book, picture, picture book . . . or other printed or written material which contains in its text, title, illustrations, or accompanying advertisements, a fictional description or illustration of sadism, masochism, sexual perversion, bestiality or lust, or of the physical torture of human beings, shall be punished by imprisonment for not more than two years or by a fine of not less than one hundred nor more than one thousand dollars. In a prosecution under this section it shall not be necessary to prove that the defendant has read, or knows of the offensive description or picture contained in the literature involved" (emphasis supplied).

some thirty feet, or halfway back, from the store's entrance. On May 7, 1968, the New Bedford police seized, pursuant to a search warrant, a quantity of books, magazines, and written materials, including the magazines "Esoteria" and "Shocker" from Literature, Inc. The defendant Girard was indicted for possession with intent to sell of obscene literature in violation of § 28A, and for having displayed sado-masochistic material for sale to a child under eighteen, in violation of § 30. In May, 1968, Deborah Isherwood purchased a magazine "Ankh Life Symbol" from the defendant St. James at Literature, Inc. On May 26, 1968, "Ankh Life Symbol" was delivered to the New Bedford police by Deborah and her father. Its purchase led to the indictment of St. James for sale, and possession with intent to sell, of obscene material in violation of § 28A. On May 16, 1968, Margaret E. Rudolph purchased "Adult Movies Illustrated" from the defendant Grenier at Literature, Inc. She selected the magazine herself from a place at the rear of the store. As a result of this purchase, the defendant Grenier was indicted for sale of obscene material in violation of § 28A, and Girard for possession with intent to sell of obscene material and for display for sale of sado-masochistic material to a child under eighteen. On May 16, 1968, John H. Dziuba selected the magazine "Naked Comics" from an open rack in Magazine World and purchased it from the defendant Dupont. This transaction led to the indictment of Dupont for sale of obscene material in violation of § 28A, and an indictment of the defendant Saba for possession with intent to sell of obscene material in violation of § 28A.

The materials in question contain for the most part photographs of nude or semi-nude men and women engaged in a variety of activities. "Esoteria" contains photographs of partially clothed models beating, strangling and whipping persons of the opposite sex. Its emphasis is on sado-masochistic activities, and includes some ten pages of "personal ads" for similar activity. "Shocker" also concentrates on sexual violence. It includes photos of a semi-nude female

covered with lacerations and abrasions. Some photographs suggest lesbian sexual play. "Ankh Life Symbol" contains several photographs of stationary male and female models with their genital regions exposed, interspersed with articles on the life style of a nudist commune, nude psychotherapy, the origin of the zodiac, and the Catholic view of the birth control pill. "Naked Comics" consists of an article relating to the development of comics in newspapers, and two photographic comic strip sequences in which male and female genitalia are exposed. "Adult Movies Illustrated" contains photographs of scantily clad female models, females being whipped, and lesbian sexual play.

The questions reported concern the validity of the court's denial of a motion to suppress evidence, the admission in evidence of the material seized, and whether findings of guilty on all indictments were warranted. These questions raise issues concerning the validity of a search warrant, the sufficiency of the indictments and evidence, the obscenity vel non of the materials involved and the constitutionality of §§ 28A and 30.

1. Our decision in *Commonwealth* v. *Palladino, ante,* 28 disposes of the convictions under § 28A. There it was decided that a complaint, following the wording of § 28A but failing to allege the defendant's knowledge of the obscene nature of the materials involved, an essential element of an offence under § 28A (*Demetropolos* v. *Commonwealth,* 342 Mass. 658), was defective and could not support a conviction. Here, as in the *Palladino* case, none of the indictments involving § 28A alleged that the defendants knew that the materials sold or possessed were obscene. Failure to charge the defendants with scienter in the indictments was fatal.

2. With regard to the indictments brought under § 30, a different problem arises, namely, whether the Legislature may constitutionally exclude scienter as an element of a crime under § 30. That section provides that "[i]n a prosecution under this section it shall not be necessary to prove that the defendant has read, or knows of the offensive description or picture contained in the literature involved."

The question raised thus differs from the issue presented in
*Demetropolos* v. *Commonwealth,* 342 Mass. 658, and *Common-
wealth* v. *Corey,* 351 Mass. 331, where the Legislature's
failure to specify whether or not scienter was an element of
the offences created by §§ 28 and 28A permitted us to con-
strue these statutes as including scienter in order to save
their constitutionality. Here that cannot be done, for the
Legislature has specifically excluded scienter as an element
of the crime. The question whether the Legislature could
constitutionally dispense with scienter as an element of an
offence is governed by our decision in *Commonwealth* v.
*Corey, supra,* at 334. As we stated there, "Absent the
scienter requirement, booksellers, unable to familiarize them-
selves with all the material on their shelves, would tend to
restrict sales to minors to the relatively few books of which
they had some knowledge of the contents or character. The
result would be an impediment to the sale to minors not
only of unprotected matter but also of that which is con-
stitutionally protected." With § 30, the threat to First
Amendment interests is even greater. The statute imposes
absolute liability on the sale, rent, display for sale, loan,
gift, or offer of sale of any "written material which contains
in its text . . . a fictional description or illustration of
sadism, masochism, sexual perversion, bestiality or lust, or
of the physical torture of human beings." A father who
gives his sixteen year old son a novel which, unknown to
him, contains a description, however brief, of human torture
would violate the statute. To avoid prosecutions, a book-
seller would have to examine minutely every novel he dis-
plays for sale or sells to a child under eighteen. Such a
restriction would obstruct the flow of clearly protected ex-
pression to children under eighteen, and is an impermissible
exercise of the legislative power.

3. It follows that all of the convictions (those under § 28A
and those under § 30) must be set aside, and the questions
3 to 7[1] inclusive reported by the judge must be answered in

---

[1] These questions were directed to whether the convictions on each indict-
ment were warranted.

the negative. The other questions need not be answered. The cases are remanded to the Superior Court for disposition in conformity with this opinion.

*So ordered.*