## COMMONWEALTH *vs.* 707 MAIN CORP.

Worcester.    September 13, 1976. — November 23, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, KAPLAN,
& WILKINS, JJ.

*Practice, Criminal,* Collateral estoppel. *Equal Protection of Laws,*
Obscenity. *Due Process of Law,* Obscenity. *Constitutional Law,*
Freedom of speech and press, Obscenity. *Obscenity.*

A judgment in favor of the defendant in a civil proceeding under G. L.
c. 272, § 30, did not collaterally estop a criminal proceeding under
c. 272, § 29, which was initiated concurrently with the § 30 proceed-
ing, against the same defendant for dissemination of the same ob-
scene matter. [377-379]

Inasmuch as the classifications of obscene material in G. L. c. 272,
§§ 28C-31, differentiate between species of obscene materials, and
not between protected and unprotected speech, the standard for re-
view of the statute under the equal protection clause of the United
States Constitution was whether the classifications had a rational
basis. [379-381]

Under G. L. c. 272, §§ 28C-31, the disparity of procedural protection
afforded books and movies had a rational basis and did not violate
the equal protection clause of the United States Constitution. [381]

The provisions of G. L. c. 272, §§ 29-31, do not violate due process of
law as the statutory scheme affords constitutionally adequate pro-
cedural protections to defendants in actions thereunder, the provi-
sions are not overbroad in their proscription of "obscene matter"
nor in their definition of "obscene matter" nor in their definition of
"knowledge," and the statutory definition of obscenity is sufficiently
specific to provide adequate notice of the proscribed conduct. [381-
386] KAPLAN, J., dissenting.

TWO COMPLAINTS received and sworn to in the District
Court of Fitchburg on July 8, 1974, and July 12, 1974, re-
spectively.

On appeal to the Superior Court, the cases were tried
before *Garbose,* J., a District Court judge sitting under
statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Charlotte Anne Perretta* for the defendant.

*John D. Keeton, Jr.*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. A judge of the District Court of Fitchburg, in August, 1974, found the defendant guilty on two complaints charging violations of G. L. c. 272, § 29, the criminal obscenity statute. The complaints were issued for violations which allegedly occurred on July 5, 1974, and on July 11, 1974. They involved the same subject matter, the motion picture film entitled "Deep Throat." The defendant appealed the convictions to the Superior Court.

On December 17, 1974, a jury trial on both complaints commenced in the Superior Court. The defendant filed as to both complaints motions to dismiss which were denied and exceptions were duly noted.

At the close of the Commonwealth's case, which included a showing of the motion picture before the jury, the defendant moved for directed verdicts on both complaints. The motions were denied and exceptions duly noted. The defendant presented no evidence and rested at the conclusion of the Commonwealth's case. On December 18, 1974, the jury returned a verdict of guilty on each complaint.

The defendant makes no contention that the jury were not warranted in concluding that the motion picture "Deep Throat" was obscene, and the uncontroverted summary in the record as to the content of the motion picture confirms the correctness of this approach. However, the defendant contends that its motions for dismissal and for directed verdicts were improperly denied for three reasons. First, a prior civil proceeding against this defendant under G. L. c. 272, § 30, collaterally estopped the Commonwealth from proceeding criminally under G. L. c. 272, § 29. Second, G. L. c. 272, §§ 28C-31, are facially unconstitutional because the disparity in procedural protections afforded books and other materials violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Third, G. L. c. 272, §§ 28-31, are facially unconstitutional

because the overbroad and vague statutory definitions of obscenity and knowledge violate the First Amendment to the United States Constitution and the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution.

We conclude that the Massachusetts obscenity statutes, G. L. c. 272, §§ 28C-31, as appearing in St. 1974, c. 430, are constitutional facially and as applied to this case.[1] We

---

[1] This statutory scheme makes available three types of proceedings for adjudication of obscenity questions and defines the relevant concepts.

General Laws c. 272, § 28C, provides for a proceeding to adjudicate the obscenity of books, but not other materials, by "an information or petition in equity . . . directed against said book by name," with notice by publication and by mail to persons interested in its dissemination. Anyone so interested may claim a jury trial in his answer. § 28D. Such an in rem proceeding under G. L. c. 272, § 28C, constitutes "a condition precedent to the institution of any proceedings pursuant to section twenty-nine [criminal proceedings] or thirty [civil proceedings] for dissemination of obscene books." § 28I. The fact of a § 28C filing is admissible in evidence in a criminal proceeding under § 29, and a final decree of obscenity or nonobscenity in a § 28C proceeding conclusively establishes a criminal defendant's knowledge or lack of knowledge of obscene contents. § 28H. Consequently, a § 28C finding of nonobscenity precludes criminal prosecution for dissemination of the defendant book while a finding of obscenity permits criminal prosecution of the book's disseminators, foreclosing the issue of criminal knowledge but not the issue of the book's obscenity. A § 28C proceeding does not purport to affect the institution or conduct of subsequent civil proceedings for dissemination of the subject book.

General Laws c. 272, § 29, provides criminal penalties for the dissemination or possession of "any matter which is obscene, knowing it to be obscene." General Laws c. 272, § 30, grants the Superior Court jurisdiction "to enjoin the dissemination of any matter which is obscene," and to order officers "to seize and destroy the same." General Laws c. 272, § 30, further provides that "[t]he person, firm, or corporation sought to be enjoined shall be entitled to a trial on the merits within one day after filing of responsive pleadings and a decision shall be rendered by the court within two days of the conclusion of the trial . . ." and that "[t]he procedures set forth in this section are in addition to criminal proceedings initiated under any provisions of the General Laws, and not a condition precedent thereto." See St. 1974, c. 430, § 10.

General Laws c. 272, § 31, includes in its list of definitions: " 'Knowing', a general awareness of the character of the matter. . . . 'Matter', . . . including but not limited to, books, magazines, motion picture films, . . . 'Sexual Conduct', human masturbation, sexual intercourse actual or simulated, . . . any touching of the genitals, pubic areas or buttocks . . . or the breasts of the female, . . . any depiction or representation of

further conclude that there was no error in the denial of the defendant's motion to dismiss and motions for directed verdicts. The judgments therefore must be affirmed.

1. *Estoppel.*

We turn first to the defendant's contention that the judgment of the Superior Court in a proceeding against it pursuant to G. L. c. 272, § 30, collaterally estopped the criminal proceedings below. After a trial on the merits in October, 1974, the judge refused to enjoin this defendant and two other defendants from showing "Deep Throat" in their movie theatres because the plaintiff district attorneys had failed to prove that the matter was obscene. The plaintiffs appealed from the judgment and in an opinion decided today we reverse the judgment. *District Attorney for the N. Dist.* v. *Three Way Theatres Corp., post,* 391 (1976). The criminal trial and conviction occurred while the appeal of the civil proceeding was pending.

The United States Supreme Court has suggested that State law determines the collateral effect of prior findings of nonobscenity in subsequent proceedings. *Miller* v. *California,* 413 U.S. 15, 34 n.14 (1973). As a general rule, Massachusetts has subscribed to the doctrine of res judicata for the same cause of action between the same parties or those in privity with them and to the doctrine of collateral estoppel for separate causes of action. *Eastman Marble Co.* v. *Vermont Marble Co.,* 236 Mass. 138, 148 (1920). It can be argued that the mere taking of an appeal from the prior judgment, as occurred in this instance, has no effect on the operation of these principles.[2] However, that rea-

excretory functions, any lewd exhibitions of the genitals, flagellation or torture in the context of a sexual relationship." That section defines as " 'Obscene', matter [which] ... taken as a whole ... (1) appeals to prurient interest of the average person, applying the contemporary standards of the commonwealth; (2) depicts or describes sexual conduct in a patently offensive way; and (3) lacks serious literary, artistic, political or scientific value."

[2] Pursuant to G. L. c. 214, § 19, repealed by St. 1973, c. 1114, § 62, entry of a timely appeal from a decree not only stayed proceedings under a permanent injunction but also vacated that decree. *Lowell Bar*

soning is not apposite here, because we conclude that the obscenity statutes themselves are controlling as to this issue.

By specifically providing that the § 30 proceeding is in addition to and not a condition precedent to a § 29 criminal proceeding, the Legislature indicated its desire to leave as many procedural and remedial options open to prosecutors as possible. It established a civil proceeding which would provide notice of potential criminal liability to disseminators of matter alleged to be obscene, while reserving for law enforcement officials the right to use criminal proceedings as a primary enforcement tool when necessary. In addition, it provided for concurrent use of civil and criminal proceedings so that courts could enjoin further acts in possible or proven violation of c. 272, § 29.

In this case public officials used the two types of enforcement proceedings concurrently. The same acts, commercial showings of "Deep Throat" in early July, 1974, formed the bases for both proceedings. Thus, the defendant's reliance on the civil judgment in its favor played no role in its allegedly criminal conduct.[3] Nor did public officials

---

*Ass'n* v. *Loeb,* 315 Mass. 176, 189-190 (1943). However, the Massachusetts Rules of Civil Procedure superseded this equity rule of limited application. The rules of civil procedure, more particularly Rule 62 (d), 365 Mass. 829 (1974), do not address the issue with complete specificity, but according to the majority rule and the Federal practice the mere taking of an appeal does not affect the operation of a judgment as res judicata between the parties thereto and their privies. *Nixon* v. *Richey,* 513 F.2d 430, 438 n.75 (D.C. Cir. 1975). Accord, *Perez* v. *Pawtucket Redevelopment Agency,* 111 R.I. 327, 338 (1973); *Denham* v. *Shellman Grain Elevator, Inc.,* 444 F.2d 1376, 1378 (5th Cir. 1971). See Restatement (Second) of Judgments § 41 par. f (Tent. Draft No. 1, 1973). This rule prevents the loser on the trial level from avoiding the effects of judgment by appealing the judgment, and thus avoids harm to the appellee's rights as well as expenditure of judicial time on relitigation of the issues already decided.

[3] If one reads § 30 as precluding the application, even where appropriate, of the doctrine of collateral estoppel in a subsequent criminal suit, the civil defendant may be substantially misled on the subject of his potential criminal liability because the Commonwealth elected to use a § 30 proceeding as a primary enforcement tool. We need not decide here whether we might find estoppel in a case where the Commonwealth tried and failed to obtain an injunction and thereafter,

harass the defendant, successful in one forum, with a succession of suits which involved lengthy, expensive, and repetitive litigation. Both trials were completed within six months of the allegedly illegal acts. Rather, these public officials proceeded both to prosecute the theatres for showing a movie they thought clearly violated § 29 and to enjoin the movie's further public availability.

Thus the Legislature, making enforcement through concurrent use of civil and criminal proceedings available to prosecutors, did not intend that the first proceeding to reach judgment would estop further action in the second proceeding. Such an estoppel effect would make concurrent proceedings meaningless. In addition, we note that common sense indicates that we should give no estoppel effect to a judgment we reverse today against these criminal proceedings which resulted in error-free judgments.

2. *Equal Protection.*

Next we turn to the defendant's contention that G. L. c. 272, §§ 28C-31, violate the equal protection clause of the United States Constitution and so are unconstitutional facially and as applied in this case. The statutory scheme requires a prior civil proceeding under §§ 28C-28I to determine whether a book is obscene as a condition precedent to the criminal prosecution of a person for the dissemination of an obscene book. Decrees under § 28 constitute conclusive evidence on the issue of criminal knowledge. Disseminators of other matter can be prosecuted criminally without a prior civil hearing to determine if the matter in question is obscene. As a result, books and their disseminators receive greater procedural protection than other materials and their disseminators. The defendant maintains that this mode of regulation bears no relation-

___

while appeal of an unfavorable result was pending, proceeded with criminal prosecution for alleged dissemination, *after the date of the civil decision,* of the same allegedly obscene matter. The problem is one that could be avoided easily by postponement of the criminal trial until the civil appeal is decided.

ship to the compelling object of the statute, is not the least restrictive means of attaining its object and, therefore, violates the equal protection provisions of the Federal and State Constitutions. This argument assumes that strict scrutiny is the appropriate standard by which to review this statutory scheme. We disagree.

This court affords statutes a presumption of constitutionality, upholding a statutory classification if any rational argument supports it, unless the statute affects a fundamental right. *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 542 (1974). The standards applicable to statutes affecting fundamental rights are those used by the defendant. See *Commonwealth* v. *O'Neal,* 367 Mass. 440, 444 (1975); *Roe* v. *Wade,* 410 U.S. 113, 155 (1973). However, since obscenity does not constitute constitutionally protected speech, *Roth* v. *United States,* 354 U.S. 476, 485 (1957), statutes regulating obscenity do not purport to affect the fundamental rights of speech and expression. Nevertheless, because a fine line separates obscenity from constitutionally protected expression, statutes regulating obscenity must be limited in their scope, *Miller* v. *California,* 413 U.S. 15, 23-24 (1973), and "appellate courts [should] conduct an independent review of constitutional claims when necessary" to protect First Amendment values. *Id.* at 25.[4]

The equal protection claims asserted by the defendant in this case do not involve First Amendment values. The classifications distinguish between species of materials, not

[4] Twice since *Miller* the Supreme Court has reviewed for constitutionality provisions of State obscenity regulations and found that aspects of the statutory schemes did not meet the constitutional requirements for protection of First Amendment values. Once, that Court, applying "independent review," found that the State definition of obscenity did not conform to the minimum definitional requirements. *Jenkins* v. *Georgia,* 418 U.S. 153, 160 (1974). More recently, that Court held that a statute's procedural provisions did not conform to the "ones which ensure 'the necessary sensitivity to freedom of expression,' *Freedman* v. *Maryland,* 380 U.S. 51, 58 ... (1965)." *McKinney* v. *Alabama,* 424 U.S. 669, 674 (1976). The statute allowed decisions under an in rem proceeding, similar to G. L. c. 272, § 28, to bar relitigation of the issue of obscenity by one not a party to the in rem proceeding.

between protected and unprotected expression. As discussed below, the procedural protections afforded disseminators of "other matter" are constitutionally adequate. Contrast *McKinney* v. *Alabama,* 424 U.S. 669, 673 (1976). Thus, the ability to litigate the line drawn between obscenity and protected speech is retained. In addition, the statutory definition of obscenity (unprotected expression) meets the definitional requirements of *Miller* v. *California,* 413 U.S. 15, 23-26 (1973), as clarified in *Jenkins* v. *Georgia,* 418 U.S. 153, 160-161 (1974). The statutes apply only to depictions of sexual conduct described therein. See G. L. c. 272, § 31.

Having decided that the obscenity definition and procedures are adequate to protect constitutional values, we apply our traditional rational basis test, see *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 544-545 (1974), to decide whether the disparity of procedural protection afforded books and other materials violates equal protection ideas. Many arguments related to the time and expense involved in § 28 proceedings could explain the disparity of procedural routes established. For example, since in rem proceedings do not allow speedy removal from the public domain of obscene matter, it is possible that the Legislature decided against their use where obscene movies are involved because movies can be made quickly available to large segments of the public. Hence the statutory distinction between books and other matter may have a rational basis and is therefore constitutional.

### 3. *Due Process: Overbreadth; Vagueness.*

Finally, we turn to the defendant's contentions that G. L. c. 272, §§ 28C-31, facially and as applied to this defendant, violated the due process provisions of the United States and Massachusetts Constitutions. We hold that this statutory scheme meets the minimum constitutional requirements for procedural protection of First Amendment values, that the statute, on its face and as applied here, is not overbroad in its definition of obscene matter or of criminal knowledge, and that the statutory

definition of obscenity is sufficiently specific to provide adequate notice as to proscribed conduct.

The proceedings, or combinations thereof, available under G. L. c. 272, § 29 and § 30, afford defendants therein constitutionally adequate procedural protections.[5] A judicial determination in an adversary proceeding on all issues is available in these proceedings. Thus, the necessary sensitivity to freedom of expression is assured. *McKinney* v. *Alabama,* 424 U.S. 669, 674 (1976). *Freedman* v. *Maryland,* 380 U.S. 51, 58 (1965). Furthermore, G. L. c. 272, § 30, mandates extraordinary speed in trial and decision making where injunctive restraints are involved, minimizing any deterrent effects from potentially erroneous preliminary injunctions. See *Freedman* at 58-59.

This statutory scheme is not overbroad in its proscription of dissemination of "obscene matter" or its definition of "knowledge." See G. L. c. 272, § 31, and note 1, *supra.* Obscene matters must depict "sexual conduct" which G. L. c. 272, § 31, defines in words which encompass only "hard core" sexual conduct as specifically described in *Miller* v. *California,* 413 U.S. 15, 25 (1973), and *Jenkins* v. *Georgia,* 418 U.S. 153, 160 (1974). Such a depiction to be found obscene in addition must meet a three-pronged test set out in G. L. c. 272, § 31, which parallels almost precisely the test established as constitutionally adequate in *Miller,* *supra* at 24. Because the statutory proscription applies only to depictions of sexual conduct which lie outside the area entitled to First Amendment protection it is not overbroad.

The statutory definition of the "knowledge" required for a criminal conviction under G. L. c. 272, § 29, includes a knowledge of the contents of the matter disseminated. As thus construed it is not overbroad. The Legislature has made a conscientious and diligent effort to draft a statute which conforms to the constitutional requirements as de-

---

[5] Because §§ 28C-28I proceedings were not involved in this case, we do not decide whether the conclusive presumptions for criminal proceedings established under § 28H may be unconstitutional or have unconstitutional applications.

Commonwealth *v.* 707 Main Corp.

fined in recent Supreme Court decisions. As early as 1959 that Court required knowledge of contents for criminal liability. *Smith* v. *California,* 361 U.S. 147, 153 (1959). In *Hamling* v. *United States,* 418 U.S. 87 (1974), decided as our present statute was under consideration, the Supreme Court elaborated on the scienter requirement of *Smith,* explaining that a defendant need not know that the matter disseminated was legally obscene as long as he had knowledge of its contents and its general character. *Id.* at 123.[6] The Massachusetts definition of "knowledge" in G. L. c. 272, § 31, see *supra* note 1, emphasizes that knowledge of legal obscenity is not required. It does not dispense, however, with the constitutional requirement that a defendant have knowledge of the matter's contents and general character before a criminal conviction for its dissemination may be obtained. Without evidence of such knowledge a criminal case will not pass the directed verdict stage.

The statutory scheme of G. L. c. 272, §§ 28C-31, is not unconstitutionally vague in its proscription of dissemination of obscene matter, because its definitions of "obscene" matter and "sexual conduct" (see *supra* note 1) provide reasonably ascertainable standards of guilt. In order to meet due process standards, statutory language must convey a sufficiently definite warning to potential defendants through standards which establish boundaries which will guide judges and juries adequately in most cases. *Roth* v. *United States,* 354 U.S. 476, 491-492 (1957), cited with approval in *Hamling* v. *United States,* 418 U.S. 87, 111 (1974). The requirement that matter disseminated depict such hard core sexual conduct as specifically defined in § 31 and the delineation of constitutionally required standards by which the triers of fact must determine whether said hard core sexual conduct is obscene provide adequate notice of potential liability to the matter's disseminators

---

[6] In general, knowledge of specific contents of matter depicting explicit hard core sexual conduct will constitute knowledge of the matter's general character. For elaboration of the knowledge requirements of G. L. c. 272, §§ 29, 31, see our opinion decided today in *Commonwealth* v. *Thureson, post,* 387 (1976).

and law enforcement officials. See *Miller* v. *California,* 413 U.S. 15, 24-27 (1973).

Furthermore, the standards which guide the triers of fact in the determination of obscenity protect the First Amendment rights of potential and actual defendants by minimizing any chilling effects inherent in obscenity regulation. See *Miller, supra* at 24. Because First Amendment rights carry especially high value in our society, we now elaborate the standards set forth in the § 31 definition of "obscene" (noting their essential conformity to those required by *Miller, supra* at 24) in order that triers of fact and the public generally may know what expression is constitutionally protected and what expression is obscene.

First, matter is not obscene unless "taken as a whole it ... appeals to prurient interest of the average person, applying the contemporary standards of the commonwealth." G. L. c. 272, § 31. This phraseology varies slightly, but not significantly, from the *Miller* requirement that " 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest." *Id.* at 24. To decide this question of fact, the triers of fact must look at the matter depicting hard core sexual conduct as a whole and see whether its dominant theme is one which goes substantially beyond customary limits of candor in appealing to a shameful or morbid interest in sex. See *Miller, supra* at 30-31; Model Penal Code § 207.10 (2) (Tent. Draft No. 6, 1957), cited in *Roth* v. *United States,* at 487 n.20.

The triers of fact must use an average citizen of Massachusetts today, not a particularly susceptible or particularly insensitive one, as a norm for this determination, as long as the matter at issue is not directed specifically to a deviant sexual group. See *Miller, supra* at 33. See also *Mishkin* v. *New York,* 383 U.S. 502, 508-509 (1966). Triers of fact may not use their own views as appropriate Commonwealth norms, but may use their knowledge of the views of average people in their own community as an appropriate norm for deciding if matter "appeals to prurient interest." See *Hamling, supra* at 104, 105. They may con-

sider expert testimony on the subject of Statewide standards, if any is offered in evidence, but also may disregard such evidence because the matter at issue may be per se sufficient evidence for a finding of prurience in most cases. See *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 56 (1973).

Second, even though a matter depicts hard core sexual conduct which appeals to prurient interest, it is not obscene unless "taken as a whole it ... depicts or describes sexual conduct in a patently offensive way." Although G. L. c. 272, § 31, expressly applies the Statewide standard only to questions of prurience, the Legislature clearly intended that the Commonwealth standard should apply also to questions of patent offensiveness. Indeed this question can be answered only with reference to contemporary Commonwealth norms. See *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.*, 383 U.S. 413, 418 (1966). Consequently, triers of fact must decide whether a Massachusetts citizen of average susceptibilities would be repelled by depictions in the matter at issue. No expert affirmative evidence is necessary on this subject, *Paris, supra* at 56, although such evidence, if offered, may be considered.

Third, even though material appeals to prurient interest and is patently offensive, it cannot be obscene constitutionally if "taken as a whole it ... [has] serious literary, artistic, political or scientific value." G. L. c. 272, § 31. *Miller, supra* at 34. Material dealing with sexual conduct in a manner which advocates ideas, which contributes to or illustrates scientific discussion, or which adds to the general body of art and literature in our culture is protected by the First and Fourteenth Amendments to the United States Constitution. See *Miller, supra* at 34; *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass., supra* at 419 n.7.[7] Therefore, appellate courts examine decisions on this subject more closely in order to

---

[7] The *Miller* alteration of the social value test articulated in *Memoirs* did not refute the principles underlying the social value test but alleviated an impossible prosecutorial burden of proof. *Hamling, supra* at 116.

ensure that First Amendment protection of ideas, however unpopular, is maintained. In addition, although no evidence beyond the material itself is necessary to prove obscenity, expert testimony has more relevance to this prong of the standard than to the other two prongs, because cultural, ideological and scientific values, unlike community norms, are not necessarily within the understanding of triers of fact. In deciding whether material is constitutionally protected, the triers of fact should look to the work as a whole to see whether it adds significantly to our aids in learning, whether it shows imagination and skill in its execution, whether it exercises the right to influence public policies and affairs of State, or whether it assists in the exploration for or discussion of scientific knowledge.

The application of this obscenity standard as to depictions of sexual conduct as defined in § 31 neither infringes nor chills the exercise of First Amendment rights. The statutory scheme, therefore, meets the requirements of the Fourteenth Amendment to the United States Constitution.

*Judgments affirmed.*

KAPLAN, J. (dissenting). Concurring in *Commonwealth* v. *Horton*, 365 Mass. 164, 177-178 (1974), and dissenting in part (with Tauro, C.J.) in *Revere* v. *Aucella*, 369 Mass. 138, 148, 149-150 (1975), I intimated my views on the constitutionality of legislation like that at bar. If it be assumed that a majority of the Supreme Court of the United States could be assembled to support the validity of the present statute under the Federal Constitution, I would hold nevertheless that it was void under the Massachusetts Declaration of Rights. I need not repeat the considerations brought forth in dissents in the Supreme Court cases which seem to me to apply as well under our own fundamental document.[1]

---

[1] See especially Brennan, J., dissenting in *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 73 (1973), and *Miller* v. *California,* 413 U.S. 15, 47 (1973). See also *Stanley* v. *Georgia,* 394 U.S. 557 (1969).