COMMONWEALTH vs. NATHAN ROSENBERG.

Middlesex.   October 4, 1979. — December 10, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Directed verdict.  *Obscenity,* Knowing dissemination
of obscene matter.

Statement of two ways in which the Commonwealth may satisfy the stat-
utory and constitutional requirement that a defendant charged with
dissemination of obscene matter be shown to have been aware of the
contents of the disseminated material.  [340]
Upon a complaint under G. L. c. 272, § 29, as appearing in St. 1974,
c. 430, § 9, it was reversible error not to have granted the defendant's
motion for a directed verdict on his claim that the Commonwealth
had failed to produce sufficient evidence to allow the jury to conclude
beyond a reasonable doubt that he knew an obscene magazine was ob-
scene when he sold it, where the only evidence of scienter was that the
defendant had long been associated with and was presently the active
owner and manager of the variety store in which he sold the magazine,
which was a current one displayed in the middle of an ordinary rack at
eye-level so that only its top portion, containing its title and its price
immediately below, was exposed, that, upon a detective removing the
magazine from the rack and walking to an adjacent counter, behind
which the defendant was standing, the detective asked and the defend-
ant stated the cost of the magazine, and that in the course of paying for
it the detective placed it on the counter, with its front cover, bearing a
full page photograph of a woman, facing up.  [340-345]

COMPLAINT received and sworn to in the First District
Court of Eastern Middlesex on May 18, 1976.

On appeal to the Superior Court the case was tried before
*Sherman,* J., a District Court judge sitting under statutory
authority.

After review was sought in the Appeals Court the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*William P. Homans, Jr.,* for the defendant.

*William L. Pardee,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.  The central issue on appeal is whether the part owner and manager of Sam's Spa, a neighborhood variety store in Everett, was properly convicted of knowingly disseminating obscene matter in violation of G. L. c. 272, § 29.[1]

After a trial by jury, Nathan Rosenberg was found guilty of disseminating the May, 1976, issue of Hustler magazine, knowing it to be obscene.[2]  Rosenberg appealed from the denial of his motion for a directed verdict made at the close of the Commonwealth's case, and we granted direct review on our own motion.

Rosenberg claims that the Commonwealth failed to produce sufficient evidence to allow the jury to conclude beyond a reasonable doubt that he knew the magazine to be obscene at the time he sold it.  We agree, and hold that Rosenberg's conviction must therefore be reversed.

The Commonwealth's evidence consisted of the testimony of Nicholas Addonizio, an Everett police department detective, and one copy each of the May, 1976, issues of Hustler and Penthouse magazines.

Addonizio's testimony indicated that on the afternoon of April 23, 1976, as the result of a conversation with a superior officer, he went to Sam's Spa "looking for two magazines, Penthouse and Hustler magazines."  Detective Addonizio was familiar with the store, since he lived in the neighborhood and had visited the store repeatedly over a period of

---

[1] General Laws c. 272, § 29, as appearing in St. 1974, c. 430, § 9, makes it a crime punishable by a sentence of up to five years' imprisonment and/or a fine of up to $5,000 to disseminate "any matter which is obscene, knowing it to be obscene."

[2] The trial judge imposed a fine sentence of $1,500, plus a surfine of $350.  Rosenberg was acquitted by the same jury on a second charge of disseminating the May, 1976, issue of Penthouse magazine.  On appeal Rosenberg does not specifically contest the issue of whether or not the May, 1976, issue of Hustler magazine constitutes obscenity.  See *Miller* v. *California,* 413 U.S. 15 (1973).

twenty years. He knew Rosenberg, and Rosenberg knew Addonizio was a police officer.

Addonizio described the defendant as the owner of the store, and Rosenberg's father-in-law as the previous owner. The store merchandise consisted of groceries and "odds and ends like that."

When Detective Addonizio entered the store, he went first to a magazine rack on his right, but was unable to find a copy of Hustler or Penthouse there. He then turned to a second magazine rack, to the left of the door, next to a counter, and in this rack found a May, 1976, issue of each magazine.

This second rack contained approximately three or four rows of magazines. Detective Addonizio could not recall what the rack was made of but did recall that Hustler and Penthouse were located in the middle of the rack, approximately five feet above the floor. The rack contained several copies of each magazine. All magazines in the rack were displayed so that only the top portion of each magazine, containing its title, was exposed.

This second rack was not separated from the rest of the store by any barrier. There were no signs specifically describing the magazines in the second rack as "adult" or distinguishing them in any way from the magazines located in the other rack. Detective Addonizio, although asked to do so, was unable to describe the other magazines in the rack from which he had taken Hustler and Penthouse. He testified that he was familiar with what is meant by "men's" or "adult" magazines, but could not recall whether such magazines were located in the rack from which Hustler was taken. He could not recall the title of any other magazine located in this rack, and added only that Playboy magazine was located "near" this rack.

Having located the magazines, Detective Addonizio removed them from the rack and walked to the nearby counter, behind which Rosenberg was standing. Rosenberg approached him, and the detective asked how much the magazines cost; Rosenberg told him the amount, and Addonizio

paid it. (At trial, Detective Addonizio was unable to recall the amount paid. The cover of the May, 1976, issue of Hustler lists a price of $1.75.)

In the course of paying for the magazines, Addonizio placed them on the counter, front cover facing up. Rosenberg did not examine the magazines, however. And when asked if Rosenberg "did anything" prior to giving him the price for the magazines, Addonizio replied, "No, he did not."

*Standard of review.* "In reviewing the denial of a motion for directed verdict, we consider only the evidence introduced up to the time the Commonwealth rested its case." *Commonwealth* v. *Borans, ante* 117, 134 (1979). *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). We must determine whether this evidence, "considered in its light most favorable to the Commonwealth, was sufficient to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Dunphy,* 377 Mass. 453, 456 (1979). "[T]he evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'" *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Commonwealth* v. *Cooper,* 264 Mass. 368, 373 (1928). Finally, since the Commonwealth must produce such evidence in regard to each element necessary to obtain a conviction under G. L. c. 272, § 29, *In re Winship,* 397 U.S. 358, 364 (1970), such evidence must exist in regard to proof that Rosenberg sold the May, 1976, issue of Hustler "knowing it to be obscene."

*Proof of scienter.* The Commonwealth contends that the fact that Rosenberg was the active owner and manager of Sam's Spa supports an inference that he had actual knowledge of the magazine's contents, and therefore knowingly disseminated obscene material. Beyond this, the Commonwealth argues that the jury could reasonably have inferred that Rosenberg had constructive knowledge of the magazine's contents from viewing the magazine's cover at the time it was sold. Finally, the Commonwealth suggests that as owner and

manager of the Spa, Rosenberg had constructive knowledge of the contents of his entire stock-in-trade, including the May, 1976, issue of Hustler magazine. We disagree.

As a general matter, proof of knowledge must be personal to the defendant but may be had "by inference from all the facts and circumstances developed at the trial." *Commonwealth* v. *Holiday*, 349 Mass. 126, 128 (1965).

More specifically, the "knowing" required by G. L. c. 272, § 29, is defined by G. L. c. 272, § 31,[3] as "a general awareness of the character of the matter" disseminated. We have had occasion to construe this statutory language. See *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 382-383 (1976); *Commonwealth* v. *Thureson*, 371 Mass. 387, 389-391 (1976). In doing so we have noted that "[t]he Massachusetts definition of 'knowledge' . . . emphasizes that knowledge of legal obscenity is not required." *Commonwealth* v. *707 Main Corp.*, *supra* at 383. "To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law." *Hamling* v. *United States*, 418 U.S. 87, 123 (1974).

We have also stressed, however, that the Massachusetts definition "does not dispense . . . with the constitutional requirement that a defendant have knowledge of the matter's contents and general character before a criminal conviction for its dissemination may be obtained." *Commonwealth* v. *707 Main Corp.*, *supra* at 383. Absent evidence of such knowledge, "a criminal case will not pass the directed verdict stage." *Id.*

Proof of scienter is required in order "to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity." *Mishkin* v. *New York*, 383 U.S. 502, 511 (1966). In holding that protection of First Amendment

---

[3] *As* appearing in St. 1974, c. 430, § 12; G. L. c. 272, § 31, has subsequently been amended in ways not here relevant by St. 1977, c. 917, §§ 4-6.

rights requires proof of scienter even in the case of sales to minors, we noted that "[a]bsent the scienter requirement, booksellers, unable to familiarize themselves with all the materials on their shelves, would tend to restrict sales . . . to the relatively few books of which they had some knowledge of the contents or character. The result would be an impediment to the sale . . . not only of unprotected matter but also of that which is constitutionally protected." *Commonwealth* v. *Corey,* 351 Mass. 331, 334 (1966).

While knowledge of both[4] the character and contents of the material disseminated is thus a required element of the offense described in G. L. c. 272, § 29, the "knowing" called for by the statute may be something less than actual knowledge. Just as the Supreme Court reasoned that requiring knowledge of the legal status of the material sold would immunize all those who conscientiously avoid "brush[ing] up on the law," *Hamling* v. *United States,* 418 U.S. 87, 123 (1974), the adoption of a requirement of actual knowledge would allow a disseminator of obscenity to immunize himself by studiously maintaining his ignorance regarding the specific contents of the materials he sells. See *State* v. *Hudson County News Co.,* 41 N.J. 247, 258 (1963) ("Otherwise, a bookseller need only close his eyes to the material he handles to avoid prosecution under an obscenity statute").

The Commonwealth need not produce an eyewitness to testify that an alleged disseminator such as Rosenberg actually read or viewed the materials at issue. *Commonwealth* v. *Thureson,* 371 Mass. 387, 389 (1976). *Smith* v. *California,* 361 U.S. 147, 154 (1959). Rather, "[t]he prosecution must produce evidence from which a jury could conclude

---

[4] We have noted that "[i]n general, knowledge of specific contents of matter depicting explicit hard core sexual conduct will constitute knowledge of the matter's general character." *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374, 383 n.6 (1976), and that "in most cases knowledge of the contents of matter depicting hard core sexual conduct as defined in § 31 will lead ineluctably to an inference of general awareness of the matter's character. Conceivably, a defendant could lack the mental capacity to understand the nature of the matter he viewed." *Commonwealth* v. *Thureson,* 371 Mass. 387, 390 n.1 (1976).

beyond a reasonable doubt that the defendant had seen, or should have seen, or otherwise had knowledge of, the material's contents." *Commonwealth* v. *Thureson, supra* at 390.

In light of this standard, the Commonwealth may satisfy the statutory and constitutional requirement that a defendant be aware of the contents of the disseminated material in one of two ways.

First, the Commonwealth may prove that the defendant had actual knowledge of the material's contents. Such actual knowledge may have been obtained by the defendant directly by a first-hand examination of the material ("had seen" in the words of the *Thureson* court) or indirectly ("otherwise had knowledge of").

The Commonwealth may also demonstrate the requisite scienter without any proof of actual knowledge by showing that a disseminator "should have seen" the material's contents, i.e., that, on the basis of all the surrounding facts and circumstances, the disseminator was subject to an affirmative duty to inquire further as to the material's contents. It is on such alternative proof, whether it be referred to as "reason to know" (*Ginsberg* v. *New York*, 390 U.S. 629, 643-644 [1968]), or constructive knowledge (*Ballew* v. *Georgia*, 435 U.S. 223, 228 [1978]), that the Commonwealth must rely in the present case.

There is simply no evidence that Rosenberg had actual knowledge of the contents of the May, 1976, issue of Hustler magazine. Detective Addonizio testified that Rosenberg did not examine the magazine. In addition, in response to the prosecutor's obvious attempt to elicit any other indication that Rosenberg may have been familiar with the contents of the magazine by asking if, at the time of sale, Rosenberg "did anything," Addonizio replied that he did not.

This case is therefore different from those cases where a seller recommends material as "better" than other available films or publications, *Kramer* v. *United States*, 293 A.2d 272, 274 (D.C. App. 1972), or answers questions concerning the contents of the material sold, *People* v. *Kuhns*, 61 Cal. App. 3d 735, 758 (1976), cert. denied, 431 U.S. 973 (1977),

or states that the material would not have been sold to minors, *People* v. *Speer,* 52 Ill. App. 3d 203, 213 (1977), or examines a portion of the contents, *State* v. *Hull,* 86 Wash. 2d 527, 540 (1976) (cover and one inside page).[5]

Furthermore, the Commonwealth's evidence of Rosenberg's long association with Sam's Spa by itself failed to show any corresponding familiarity with Hustler magazine; Detective Addonizio testified that Hustler was a new publication that "just had come out around [the] time" he purchased it. There was no evidence that the May, 1976, issue of the magazine had been in the store for any period of time,[6] or that Rosenberg as manager would have had any reason to have contact with either the May, 1976, or previous issues of the magazine.[7]

Moreover, the Commonwealth presented no evidence that Rosenberg "otherwise had [actual] knowledge of" the magazine's contents. There was no testimony here, for example, that customers had complained or otherwise commented to Rosenberg regarding the contents of magazines sold by him.

---

[5] The Commonwealth suggests that the existence of two racks of magazines supports an inference that adult magazines were segregated from those of general interest, and that Rosenberg, as store manager, must have been aware of the adult magazines' contents in order to carry out this segregation process. As noted, *supra,* however, there was no evidence in the Commonwealth's case indicating in any way that adult magazines were segregated in a special rack. Detective Addonizio, although familiar with what is meant by "adult" magazines, could not characterize the magazines in the rack from which Hustler and Penthouse were taken, or even recall whether other such magazines were located in this rack. Absent evidence of segregation, we need not reach the question of the extent to which such segregation might justify an inference of actual knowledge. Cf. *Lakin* v. *United States,* 363 A.2d 990, 999 (D.C. App. 1976) (existence on the premises of a machine for wrapping magazines in cellophane and testimony that adult magazines were so wrapped justified an inference that manager had actual knowledge of the magazines' contents).

[6] The date of purchase (April 23, 1976) was prior to the issue date (May, 1976).

[7] To the extent that the Commonwealth argues that evidence of Rosenberg's status as owner and manager is, without more, sufficient to establish an inference of scienter, its position is untenable in light of *Smith* v. *California,* 361 U.S. 147 (1959). See *Commonwealth* v. *Girard,* 358 Mass. 32 (1970).

See *State* v. *Hudson County News Co.*, 41 N.J. 247, 258 (1963) (objections by magazine retailers to wholesale supplier defendant). In short, there is simply no evidence to indicate that Rosenberg in any way indirectly obtained actual knowledge of the magazine's contents.

This case therefore turns on the sufficiency of the Commonwealth's proof of constructive knowledge. The Commonwealth argues that the jury could reasonably have inferred that Rosenberg should have known the magazine's contents because the officer placed the magazine on the counter with its front cover facing up.[8] The weakness in the Commonwealth's claim is the absence of any evidence that Rosenberg so much as glanced at the cover of the magazine. While Addonizio testified that he placed his selected copies of Hustler and Penthouse on the counter behind which Rosenberg was standing, the detective specifically added that Rosenberg did not examine the publications.

Immediately following this testimony, in what can only reasonably be viewed as an attempt to elicit some indication that Rosenberg at least looked at the covers or in some other way indicated his familiarity with the magazines, the prosecutor asked Addonizio, "Now, prior to giving you the price of the magazines, did he [Rosenberg] do anything?" To which Detective Addonizio replied, "No, he did not."

As a general rule, it may well be reasonable to infer that a person who sells a magazine whose price is listed on the

---

[8] The front cover of the May, 1976, issue of Hustler measures approximately eight by eleven inches, and consists of a full page photograph of a woman. The Commonwealth does not, and could not, contend that the cover itself is obscene. Superimposed across the blank space at the top of the photograph in letters approximately two inches high is the magazine's nameplate ("HUSTLER"), immediately beneath which appears in letters approximately one-eighth inch high, a slogan ("FOR THE REST OF THE WORLD") and the date and price ("MAY 1976 $1.75").

The front cover of the May, 1976, issue of Penthouse magazine is of similar size, and again consists of type superimposed over a full page photograph. The magazine's nameplate ("PENTHOUSE") appears in type approximately one and one-eighth inches high across the blank space at the top of the photograph. Below this, in approximately one-eighth inch type, appears a slogan ("THE INTERNATIONAL MAGAZINE FOR MEN") and the issue date and price ("MAY 1976 $1.25").

cover must at least glance at the cover in the course of determining what to charge. See *Commonwealth* v. *Bono*, 7 Mass. App. Ct. 849, 850 (1979). The facts of this case, however, make such an inference speculative.

Detective Addonizio testified that the magazines in the rack from which Hustler was taken were displayed with only their titles visible. The price listed on the cover of Hustler appears immediately below the magazine's title, and thus might well have been observed without viewing the entire cover. Furthermore, the rack from which the magazine was taken was located adjacent to the counter. Hustler and Penthouse were stored in this rack at eye level. Thus Rosenberg, standing behind the counter, could have readily determined the prices of the two magazines which Detective Addonizio selected from the rack without examining their covers at the time Addonizio placed them on the counter. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940).

Furthermore, there is also an absence in the Commonwealth's case of any of those additional factors which have been cited as at least partially responsible for placing other sellers on notice as to a publication's contents. The magazine was not labelled "adults only," *People* v. *Glass*, 41 Ill. App. 3d 43, 47 (1976), and was not wrapped in plastic, *Lakin* v. *United States*, 363 A.2d 990, 998 (D.C. App. 1976), or stapled shut, *Commonwealth* v. *Bono*, 7 Mass. App. Ct. 849, 850 (1979). The magazine was not sold from a place of business "clearly labelled" as an "adult book" store, *People* v. *Speer*, 52 Ill. App. 3d 203, 213 (1977), or from a store that charged admission, *People* v. *Rode*, 57 Ill. App. 3d 645, 648 (1978). And there was no indication that a far higher price was paid for this magazine than for normal periodicals.[9] *People* v. *Moore*, 53 Ill. App. 3d 75, 78

---

[9] Detective Addonizio could not recall the price paid. The list price on the cover was $1.75.

(1977). Detective Addonizio had no conversation with Rosenberg regarding the magazine's contents, and did not call Rosenberg's attention to the magazine's cover.

The Commonwealth's case on constructive knowledge is not materially aided by the fact that Rosenberg was the owner and manager of Sam's Spa.[10] Rosenberg was not the manager of an adult bookstore, holding itself out to the public as such, who therefore might at least arguably be said to have placed himself under a duty to see that all his materials in stock are not obscene. *People* v. *Adler,* 25 Cal. App. 3d Supp. 24, 37 (1972), vacated on other grounds, 413 U.S. 912 (1973). Similarly, as we have said, there exists no evidence in the Commonwealth's case as to the segregation of materials within the store, or the creation of an "adults only" area. See *People* v. *Tannahill,* 38 Ill. App. 3d 767, 772 (1976) (materials arranged according to sexual explicitness). Nor was Rosenberg actively engaged in managing a business that was itself producing obscene materials. See *United States* v. *Friedman,* 528 F.2d 784, 789 (10th Cir. 1976), reversed on other grounds, 430 U.S. 925 (1977), and *United States* v. *Thevis,* 526 F.2d 989, 992 (5th Cir.), cert. denied, 429 U.S. 928 (1976).

We conclude that the Commonwealth's evidence of the facts and circumstances surrounding Rosenberg's sale of the May, 1976, issue of Hustler magazine, viewed in the light most favorable to the Commonwealth, was insufficient to permit the jury to infer the existence of scienter. See *People* v. *Kimmel,* 34 Ill. 2d 578, 584 (1966) (sale of three obscene books, whose covers were not obscene; seller sold books and placed them in a bag; held, no scienter). The motion for a directed verdict should have been granted. The judgment

---

[10] What we have said in regard to proof of actual knowledge, note 7, *supra,* is, of course, equally true in regard to proof of constructive knowledge: to the extent that the Commonwealth argues that evidence of Rosenberg's status as owner and manager is, without more, sufficient to establish an inference of scienter, its position is untenable. *Smith* v. *California,* 316 U.S. 147 (1959).

is reversed, the verdict is set aside, and a judgment for the defendant shall be entered.[11]

*So ordered.*

---

[11] This opinion rests on an interpretation of G. L. c. 272, § 29. However, the author calls attention to her views as expressed in *Commonwealth* v. *Trainor,* 374 Mass. 796, 807-811 (1978) (Abrams and Liacos, JJ., dissenting). Justices Kaplan and Liacos join in the present opinion, although of the view that the statute is unconstitutional. See *Commonwealth* v. *Trainor, supra* at 806 (Kaplan and Liacos, JJ., dissenting), and cases cited.