COMMONWEALTH *vs.* ERNEST DENNIS.

Essex.    January 8, 1975. — June 9, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Constitutional Law*, Freedom of the press and of speech, Election circulars or posters. *Elections.*

G. L. c. 56, § 41, respecting issuance of anonymous political circulars and posters, restricts free expression by nonvoters in violation of the First Amendment to the United States Constitution [94-95]; a defendant convicted of a violation of c. 56, § 41, was entitled to argue such unconstitutionality even if he was a registered voter and even if a misrepresentation of the source of his publication could be constitutionally proscribed [95-96]; and if § 41 of c. 56 should be construed as applicable only to voters' publications, the classification thereby created would be arbitrary and in violation of the defendant's constitutional right to equal protection of the laws [95-96].

Statement of some significant problems under the First Amendment
to the United States Constitution with respect to any statute re-
quiring the author of a publication to reveal his identity. [97-99]

COMPLAINT received and sworn to in the District Court
of Southern Essex on December 9, 1971.

Upon appeal to the Superior Court the case was heard
by *Johnson, J.,* a District Court judge sitting under statu-
tory authority.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*John Reinstein* for the defendant.

*John C. Doherty,* Assistant District Attorney, for the
Commonwealth.

WILKINS, J.   The defendant was charged with a viola-
tion of G. L. c. 56, § 41, which makes a crime of the
writing, printing, posting or distribution of anonymous
circulars and posters which are designed to aid or to
defeat any candidate for nomination or election to any
public office or any question submitted to the voters.[1]

The defendant wrote a four page tabloid circular
under the name "Saugus News Enquirer," devoted to
commentary generally critical of incumbent selectmen of
Saugus who were candidates for reelection.   The defend-
ant arranged for the printing and distribution without
charge of the circular two days before the election.   The

---

[1] General Laws c. 56, § 41, as most recently amended by St. 1950,
c. 88, reads as follows:   "No candidate for nomination or election to
public office or any other person shall write, print, post or distribute,
or cause to be written, printed, posted or distributed, a circular or
poster designed to aid or defeat any candidate for nomination or
election to any public office, or designed to aid or defeat any question
submitted to the voters, unless there appears upon such circular or
poster in a conspicuous place either the names of the chairman and
secretary, or of two officers, of the political or other organization
issuing the same, or of some voter who is responsible therefor, with
his name and residence, and the street and number thereof, if any.

"Violation of this section shall be punished by imprisonment for not
more than six months."

defendant's name and address did not appear on the circular, nor did the name of any other person or organization responsible for the publication. Rather, it stated that the "Saugus News Enquirer is owned by the Association of Concerned Taxpayers, Box 54, Saugus, Mass." There was no such organization or any Box 54 in Saugus in the name of such an association.

Prior to trial in the Superior Court, the defendant moved to dismiss the complaint on the ground that § 41 violated art. 16 of the Declaration of Rights of the Constitution of the Commonwealth and the First and Fourteenth Amendments to the Constitution of the United States. The motion was denied. The case was tried on a statement of agreed facts before a judge without a jury. The defendant was found guilty and sentenced to three months in a house of correction. He argues here his exception to the denial of his motion to dismiss the complaint.

The defendant argues that § 41 violates the First Amendment rights of nonvoters.[2] Assuming that § 41 applies to nonvoters, as literally it appears to do, a nonvoter who wishes to write, print, post or distribute a publication of the class described in § 41 must obtain some voter who will be "responsible therefor," and whose name and residence must appear on the publication. There is no requirement that the nonvoter's name appear on the publication with that of the voter. Thus any purpose of § 41 to disclose the source of all campaign related literature is not achieved. In fact, the statute as applied to a nonvoter seems to encourage, or at least permit, a misrepresentation of the true source of the publication. More importantly, however, for First

---

[2] Although the statement of agreed facts does not state whether the defendant was a registered voter, it makes no difference because of the view we take of § 41.

The defendant relies on art. 16 of the Declaration of Rights in his argument, but advances no separate contentions under the State Constitution.

Amendment purposes, § 41 imposes an unconstitutional prior restraint on a nonvoter's exercise of First Amendment rights by requiring him to obtain the assent of a voter before publishing election literature.[3]   Thus, even if the State properly could compel disclosure of the source of all such literature, § 41 restricts free expression by nonvoters.   In this respect § 41 is unconstitutionally overbroad.

The defendant is entitled to argue the unconstitutional overbreadth of § 41 as applied to nonvoters, even if he is a registered voter and even if his particular conduct in misrepresenting the source of his publication could be proscribed without violating any First Amendment rights. See *Broadrick* v. *Oklahoma,* 413 U. S. 601, 611-615 (1973); *Plummer* v. *Columbus,* 414 U. S. 2 (1973).   The Supreme Court "has altered its traditional rules of standing to permit — in the First Amendment area — 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' . . . Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick* v. *Oklahoma, supra,* at 612.

If, in order to avoid its apparent overbreadth, we were to construe § 41 as applicable only to voters' publications, the classification thereby created would be arbitrary and, as the defendant argues, in violation of the defendant's constitutional right to equal protection of the laws. There is no rational purpose served by requiring voters to identify their campaign literature while permitting non-

---

[3] To construe § 41 to permit a nonvoter to satisfy the obligations of this criminal statute by disclosing his own name and residence would be plainly inconsistent with the language of § 41.

voters to express themselves anonymously. See *Hall-Omar Baking Co.* v. *Commissioner of Labor & Indus.* 344 Mass. 695, 707 (1962); *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414, 423-424 (1965).

This view of the unconstitutionality of § 41 is the same as that adopted by the Supreme Court of California in *Canon* v. *Justice Court for the Lake Valley Judicial Dist. of El Dorado County*, 61 Cal. 2d 446, 460-461 (1964), with respect to a statute substantively the same as § 41 for this purpose. The particular defect on which this decision is based can, of course, be corrected by new legislation.[4]

Although from what we have said it is apparent that the defendant's exception to the denial of his motion to dismiss the complaint must be sustained, we believe it appropriate to indicate that there are significant First Amendment problems with any statute which requires the author of a publication to reveal his identity.

In *Talley* v. *California*, 362 U. S. 60 (1960), the Supreme Court struck down an ordinance prohibiting the distribution of any handbill not containing the name and address of the person who printed, wrote, compiled or manufactured it and the person who caused it to be distributed. The court said that "[t]here can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression." *Id.* at 64. The court noted the historical importance and constructive effect of certain anonymous writings and concluded that the government did not have the right to compel disclosure in the circumstances before it. "[I]dentification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." *Id.* at 65.

Since the *Talley* decision, several courts have arrived at similar conclusions concerning statutes designed to compel

---

[4] We note that G. L. c. 56, § 39, as amended by St. 1973, c. 1226, presents the same problem as § 41.

the disclosure of the source of communications. See *Huntley* v. *Public Util. Commn. of Cal.* 69 Cal. 2d 67 (1968) (recorded telephone messages); *Bogalusa* v. *May,* 252 La. 629 (1968) (circulars and pamphlets); *Opinion of the Justices,* 306 Atl. 2d 18 (Maine, 1973) (authors of newspaper editorials); *Opinion of the Justices,* 324 Atl. 2d 211 (Del. 1974) (same); *People* v. *Mishkin,* 17 App. Div. 2d (N. Y.) 243 (1962) affd. 15 N. Y. 2d 671 (1964), affd. on other grounds sub nom. *Mishkin* v. *New York,* 383 U. S. 502 (1966) (disclosure of publisher or printer); *Matter of Figari* v. *New York Tel. Co.* 32 App. Div. 2d (N. Y.) 434 (1969) (recorded telephone messages). Cf. *Lantana* v. *Pelczynski,* 290 So. 2d 566 (Fla. App. 1974).

It seems clear that any public interest in revealing the source of a communication so that the recipient may assess its content in light of that source does not furnish a constitutionally sufficient justification for a prohibition of all anonymous campaign literature.

In the *Talley* case, the Supreme Court left open the question whether a State constitutionally might require disclosure of the source of any printed material which was offensive, advocated unlawful conduct or was fraudulent or libellous. The statute before us deals with disclosure in connection with electioneering. It is not limited, however, to written material critical of a candidate or the sponsors of a question to be voted on. It applies to all election related writings, including those which are wholly laudatory, and thus it clearly violates the teaching of the *Talley* case.

Some courts have indicated that carefully restricted disclosure legislation relating only to electioneering would survive a First Amendment challenge. See *Canon* v. *Justice Court for the Lake Valley Judicial Dist. of El Dorado County,* 61 Cal. 2d 446 (1964), as construed in *Huntley* v. *Public Util. Commn. of Cal.* 69 Cal. 2d 67 (1968) (dicta upholding a statute more restrictive than § 41 but of the same general character); *United States* v. *Scott,* 195 F. Supp. 440 (D. N. D. 1961) (Federal dis-

closure statute concerning Federal elections upheld without significant discussion); *United States* v. *Insco*, 365
F. Supp. 1308 (M. D. Fla. 1973), revd. on other grounds
496 F. 2d 204 (5th Cir. 1974) (upholding Federal statute
requiring source disclosure in a Federal election to assure
the fairness of the election); Developments in the Law —
Elections, 88 Harv. L. Rev. 1111, 1286-1291 (1975). Cf.
*United States* v. *Harriss*, 347 U. S. 612, 625-626 (1954)
(disclosure of paid lobbyists).[5]

There is, however, significant authority that a disclosure requirement relating to election pamphlets cannot
survive a First Amendment challenge. See *Zwickler* v.
*Koota*, 290 F. Supp. 244 (E. D. N. Y. 1968), vacated on
other grounds sub nom. *Golden* v. *Zwickler*, 394 U. S.
103 (1969) (State statute quite similar to § 41 held unconstitutional); *People* v. *Duryea*, 76 Misc. 2d (N. Y.)
948 (1974), affd. 44 App. Div. 2d (N. Y.) 663 (1974)
(same); *People* v. *Bongiorni*, 205 Cal. App. 2d Supp. 856
(Sup. Ct. 1962) (same); *Printing Indus. of the Gulf Coast*
v. *Hill*, 382 F. Supp. 801, 811, 817 (concurring opinion)
(S. D. Tex. 1974), probable jurisdiction noted 419 U. S.
1088 (1974). Cf. *Ex parte Harrison*, 212 Mo. 88 (1908)

---

[5] Prior to the *Talley* decision, several State courts upheld disclosure
statutes somewhat similar to § 41. In *State* v. *Freeman*, 143 Kan.
315, 319-320 (1936), a more narrowly drawn statute, requiring
disclosure on any circular or poster criticizing a candidate's personal
character or political action, was upheld under the liberty of the press
provision of the State Constitution (and under the First Amendment
to the United States Constitution because the prosecutions were not
based on an act of Congress). A similar conclusion was reached
under the State Constitution in *Commonwealth* v. *Evans*, 156 Pa.
Super. 321, 326-327 (1944). See also *Commonwealth* v. *Acquaviva*,
14 D. & C. 2d (Pa.) 285 (1958), affd. 187 Pa. Super. 550 (1958). In
the *Evans* case, the court held that the defendant lacked standing to
argue that the statute unconstitutionally discriminated by requiring a
nonvoter to obtain the sponsorship of a voter (327-328). These
opinions relied heavily on the undesirability of anonymous writings, a
constitutional view substantially rejected in the *Talley* case. A
challenge under the Ohio Constitution to a statute somewhat
narrower in scope than § 41 was rejected in *State* v. *Babst*, 104
Ohio St. 167 (1922).

(State Constitution violated by statute requiring source disclosure in certain printed reports concerning political candidates).

In order to justify a restraint on protected expression, such as compulsory disclosure of the source of a political leaflet, the State must demonstrate that there is a compelling State interest in such a restraint. *Thomas* v. *Collins,* 323 U. S. 516, 530 (1945). *National Assn. for the Advancement of Colored People* v. *Alabama,* 357 U. S. 449, 463 (1958). *Gibson* v. *Florida Legislative Investigation Comm.* 372 U. S. 539, 546 (1963). *De-Gregory* v. *Attorney Gen. of N. H.* 383 U. S. 825, 829 (1966). See *Opinion of the Justices,* 363 Mass. 909, 916 (1973). Moreover, the limitation must be no greater than is necessary to protect that compelling interest. *Shelton* v. *Tucker,* 364 U. S. 479, 488 (1960). *Kusper* v. *Pontikes,* 414 U. S. 51, 59 (1973). *Procunier* v. *Martinez,* 416 U. S. 396, 413-414 (1974). Thus, in any legislative attempt to reconstruct § 41, these constraints on the power of a State to limit freedom of expression must be carefully considered.

*Exceptions sustained.*