OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Police power, Freedom of speech and press, Alcoholic liquors, Opinions of the Justices. *Alcoholic Liquors.*

With respect to two bills pending in the General Court in 1977, Senate No. 1718 and House No. 2762, each of which would amend G. L. c. 138 and would limit the advertising of alcoholic beverages, this court, upon being asked by the Senate whether the bills, if enacted,

would contravene various provisions of the Constitution of the United States or the Constitution of the Commonwealth, was unable to provide definite answers regarding the validity of the bills because of the absence of a record developing facts and reasons; however, for the assistance of the Senate in any further deliberations, the court set out its provisional or explanatory opinion. [890]

On August 24, 1977, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit their answer to the questions stated in an Order dated June 14, 1977, and transmitted to us on June 23, 1977.

The Order recites that there are pending in the General Court two bills, Senate No. 1718 and House No. 2762 (transmitted to us with the Order), each of which would limit the advertising of alcoholic beverages. We are asked to express our opinion whether the bills, if enacted, would contravene § 1 of the Fourteenth Amendment to the Constitution of the United States and art. 10 of the Declaration of Rights of the Constitution of the Commonwealth guaranteeing equal protection of the laws; or § 8 of art. I of the Constitution of the United States containing the commerce clause; or § 2 of the Twenty-first Amendment to the Constitution of the United States dealing with the importation of intoxicating liquors into any of the States; or would exceed the General Court's police power as set forth in Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth.

Although the Order does not mention specifically the First Amendment to the Constitution of the United States or art. 16 of the Declaration of Rights of the Commonwealth regarding freedom of speech, those constitutional provisions are necessarily implicated by the question whether the bills would exceed the police power, since the free speech guaranty (like other similar guaranties of personal rights) operates as a limitation on that power. See

*Commonwealth* v. *Libbey*, 216 Mass. 356, 357-358 (1914).[1]

*Summary of answer.* There is doubt that the bills could withstand certain challenges based on constitutional grounds. The outcome of litigation on such lines would depend, in part, on whether adequate reasons or justifications could be established for the restrictions imposed by the bills. In the absence of a record developing the facts and reasons (including reference to any findings that might be made by the Legislature in the course of the passage of the bills), we are unable to provide a definite answer regarding the validity of the bills. Cf. *Opinion of the Justices,* 5 Met. 596, 597-598 (1844). For the assistance of the Senate in any further deliberations, we set out our provisional or explanatory opinion.

*Senate No. 1718.* This bill (text in Appendix) would amend G. L. c. 138, § 24, by adding a proviso prohibiting all price advertising of alcoholic beverages appearing outside licensed premises, except such as is (i) visible from inside the premises, (ii) contained in a publication circulated to the liquor trade and not to the general public, or (iii) placed by the brand owner in a publication circulated to the general public.[2]

---

[1] Indeed, the constitutional provision conferring the power to enact police measures recognizes such limitations in the words "so as the same be not repugnant or contrary to this constitution." Part II, c. 1, § 1, art. 4.

If the Order were read as not seeking consideration of the free speech issue, it would frame a problem so artificially limited as to create a doubt whether it presented an "important [question] of law" or a "solemn [occasion]" (Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments), entitling the Justices to answer.

[2] At present, G. L. c. 138, § 24, as appearing in St. 1971, c. 478, authorizes the Alcoholic Beverages Control Commission, with the approval of the Governor, to make regulations, not inconsistent with the statute, "regulating all advertising of alcoholic beverages, except such advertising as appears in publications which are circulated to the liquor trade and not to the general public." Present regulations forbid false advertising and so forth but include nothing comparable to the broad prohibition of truthful advertising by retailers or others envisaged by Senate No. 1718.

By G. L. c. 138, § 15, as amended through St. 1973, c. 422, retailers are required to "keep conspicuously posted in each room where any

We consider a possible claim by a retailer in the Commonwealth that he has a constitutional right to publish his prices by handbill or newspaper outside the licensed premises, and a corresponding claim by consumers that they are constitutionally entitled to receive the information in those ways. This takes us to *Bates* v. *State Bar of Ariz.* 433 U.S. 350, decided on June 27, 1977, which held that the State was without power to forbid a lawyer to advertise to the general public the fees he proposed to charge for routine (i.e., more or less standardized) services. The *Bates* case was the culmination of a series of decisions by the Supreme Court according qualified First Amendment rights to advertising (commercial speech), and overruling the contrary suggestions of *Valentine* v. *Chrestensen,* 316 U.S. 52 (1942). See *Bigelow* v. *Virginia,* 421 U.S. 809 (1975); *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748 (1976); *Linmark Assocs., Inc.* v. *Willingboro,* 431 U.S. 85 (1977); *Carey* v. *Population Servs. Int'l,* 431 U.S. 678 (1977). See also *John Donnelly & Sons* v. *Outdoor Advertising Bd.,* 369 Mass. 206, 225-228 (1975). To sum up the development: The Court is prepared to go a considerable distance to preserve "the free flow of commercial information" (*Virginia State Bd. of Pharmacy, supra* at 764) against restrictions by government. The principle is subject to exceptions for deceptive, misleading, or false statements, and statements proposing illegal transactions; and special considerations are understood to apply to communications by electronic broadcast means. Also, the principle leaves room for reasonable regulations of the time, place, and manner of advertising.[3] The Court has indicated

---

alcoholic beverages are sold a price list of such beverages." A regulation of the Commission forbids retailers to sell or offer to sell (and thus to advertise) at less than their "invoiced cost." See note 9 *infra.*

[3] "We have often approved restrictions of that kind [time, place, and manner] provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." *Virginia State Bd. of Pharmacy, supra* at 771.

that more drastic regulations approaching or encompassing substantial prohibitions may be justified on a demonstration of societal interests overcoming the values inherent in the relatively untrammeled publication and receipt of the information.[4] It is likely that no rule against "prior restraint," such as applies to noncommercial discourse, will be thought relevant to advertising; so also the notion of "overbreadth" appears inapposite, so that each litigation will be decided by reference to the particular impact of the given legislation or administrative regulation on the parties, not on a consideration of the range of the restraints that could be threatened under it.[5]

In defense of the validity of Senate No. 1718 as it would bear on the claims of the retailer and consumers above mentioned, one could urge that it was only a regulation of place or manner. To be sure, the prohibition would not be total. Yet there would be a loss of access by members of the public to comparative price information.[6] Accordingly, solid justification for the legislative restriction might be demanded, and whether that could be furnished we do not now have the means to judge.[7] It is suggested by one of

---

[4] The precise ordering of values is not settled in the Supreme Court cases and doubtless will be long debated. See Note, 18 B.C. Indus. & Com. L. Rev. 276, 306-316 (1977).

[5] This underlines the difficulty of rendering a meaningful opinion about the present bills in the absence of a developed record upon a specific application.

[6] The prohibition was not total in *Bates*. The scope of the prohibition under Senate No. 1718 would resemble that in *Virginia State Bd. of Pharmacy;* see the remarks of Rehnquist, J., dissenting, *supra* at 781-782. See also the discussion of alternative avenues of communication in *Linmark, supra* at 93-94.

[7] In response to our broad invitation to interested persons to submit briefs as friends of the court, briefs have been filed by the Attorney General, the Wine & Spirits Wholesalers of Massachusetts, and the Massachusetts Newspaper Publishers Association, for which we express thanks. As might be expected, none attempts an extensive presentation of the facts, which in all events would be ex parte.

The Attorney General supports Senate No. 1718, but reserves the free speech issue as the Senate did not list it specifically among its questions; he refrains from discussing House No. 2762 apparently because of the variability of the facts and because of the seriousness of

the friends of the court that the proposed statute would reduce price competition, thus preventing domination of the field by the strongest competitors and helping to "stabilize" the industry; a collateral benefit claimed for the statute is that it would work against the consumption, or over-consumption, of alcohol.[8] But these are merely casual predictions as to how the legislation might operate in a field already extensively regulated.[9] We add that justifications of the kind just described would have to contend with some apparent preference in the Supreme Court cases for a free market,[10] as well as with a suggestion in those cases that the First Amendment itself expresses a bias against keeping the public uninformed as part of an ostensible effort to better their condition.[11]

Section 2 of the Twenty-first Amendment, although speaking only of transportation and importation of liquor,[12]

---

the free speech issue. The Wholesalers discuss the free speech issue with the other issues and support Senate No. 1718, but regard House No. 2762 as unconstitutional in its present form. The Newspaper Publishers consider both bills to be unconstitutional on the free speech ground without having to go further.

[8] In *Virginia State Bd. of Pharmacy,* the restriction of advertising of prescription drugs was defended, unsuccessfully, on the reasoning that it would discourage excessive prescription and use of the drugs (see Rehnquist, J., dissenting, *supra* at 781, 788-789); and in *Carey, supra* at 700-702, the subject matter of the restriction was contraceptives and an argument that a ban on advertising would discourage promiscuity among minors likewise failed.

[9] The field is intricate and the statute book appears not to tell the whole story. Section 25C of c. 138 nominally establishes a system of commission approved "minimum consumer resale" prices for many items of bottled liquor and forbids sale or advertising below such prices but the commission appears to hold that no such prices are in effect.

[10] See the remarks about a "free enterprise economy" in *Virginia State Bd. of Pharmacy, supra* at 765.

[11] "It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us." *Virginia State Bd. of Pharmacy, supra* at 770.

[12] "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

was early said to strengthen the State's police power in the regulation of the subject, but to what extent, the decisions did not reveal. The case of *California* v. *LaRue,* 409 U.S. 109 (1972), which validated certain regulations of conduct and expression at licensed bars, may be proof of the persistence of this idea in the particular context. (See, following the *LaRue* case, *Revere* v. *Aucella,* 369 Mass. 138 [1975], appeal dismissed, sub nom. *Charger Invs. Inc.* v. *Corbett,* 429 U.S. 877 [1976].[13]) More recently, stress has been laid on the fact that the Twenty-first Amendment does not modify the Bill of Rights as to local liquor regulations. See *Craig* v. *Boren,* 429 U.S. 190, 204-210 (1976), a decision striking down on equal protection grounds sex discrimination in the sale of beer. See also *Women's Liberation Union* v. *Israel,* 512 F.2d 106 (1st Cir. 1975); *White* v. *Fleming,* 522 F.2d 730 (7th Cir. 1975). The guaranties of procedural due process and equal protection regarding race have been applied without diminishment despite a liquor context. See *Wisconsin* v. *Constantineau,* 400 U.S. 433 (1971); *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163 (1972).[14] First Amendment protection of commercial speech may remain similarly undiminished by the Twenty-first in the situation of the in-State retailer considered so far in this opinion.

Senate No. 1718, however, by its terms appears to comprehend a prohibition of price advertising in the Commonwealth at the instance of out-of-State firms (other than in-trade publications, or by brand owners in general publications). The Twenty-first Amendment lifts various limitations on State power imposed by the commerce clause, and the Commonwealth has in fact controlled certain importations across its borders (see G. L. c. 138, §§ 18-18A). It could be argued that Senate No. 1718 is in aid of the

---

[13] If liquor is subject to extensive local police regulation, pharmacists and lawyers, two subjects of the recent advertising decisions, are also subject to much regulation.

[14] Cf. *Department of Rev.* v. *James B. Beam Distilling Co.,* 377 U.S. 341 (1964) (export-import clause of the Constitution not affected by Twenty-first Amendment).

enforcement of an exclusionary policy permitted by the Amendment. The argument has weight, but again facts and reasons would have to be adduced and established.[15] Advertisements with price information would not themselves propose illegal transactions, since residents of the Commonwealth are not barred from purchasing liquor elsewhere, e.g., for consumption where purchased.[16] Such advertisements would, indeed, carry political intelligence in the sense that they might lead citizens of the Commonwealth to reconsider the wisdom of the current policy on importations or of the present system of liquor regulation in the Commonwealth. In all events, it might be found that a legal distinction was justified between, say, an out-of-State retailer attempting to distribute in the Commonwealth handbills which specified prices available across the border, and such a retailer advertising in a newspaper published in the Commonwealth but circulating also in the other State and perhaps the most effective advertising medium there. (Compare the quotation from *Bigelow* v. *Virginia,* 421 U.S. 809 [1975], in the text below.[17])

*House No. 2762.* This bill (see Appendix) would amend G. L. c. 138 by adding a § 25F prohibiting the send-

---

[15] Compare the statement that "the Twenty-First Amendment does not *pro tanto* repeal the Commerce Clause, but merely requires that each provision 'be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case.' " *Craig* v. *Boren, supra* at 206, quoting from *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.,* 377 U.S. 324, 332 (1964).

[16] In *Bigelow* v. *Virginia,* 421 U.S. 809 (1975), the advertisement in a Virginia newspaper by a New York organization publicized an abortion referral service then lawful in New York but illegal in Virginia. See *Opinion of the Justices,* 353 Mass. 779, 783 (1967).

[17] On such questions the older cases such as *Head* v. *New Mexico Bd. of Examiners in Optometry,* 374 U.S. 424 (1963), are not much help, among other reasons because they did not consider the First Amendment. See *id.* at 432-433 n.12; *Virginia State Bd. of Pharmacy, supra* at 756 n.13. See also Lydick, State Control of Liquor Advertising Under the United States Constitution, 12 Baylor L. Rev. 43 (1960); Annots., 10 L. Ed.2d 1383 (1964); 19 A.L.R.2d 1114 (1951); 48 A.L.R. 563 (1927); 57 *id.* 105 (1928); 115 *id.* 952 (1938).

Concluding our discussion of Senate No. 1718, we note that nothing appears added to the analysis by equal protection considerations.

ing into the Commonwealth or the publication therein of an advertisement for alcoholic beverages whether the purchase was to be made within or outside the Commonwealth, unless the advertiser was a person duly licensed to traffic in alcoholic beverages in the Commonwealth.

The proposed legislation seems directed mainly to keeping the Commonwealth free of advertising of liquor opportunities outside the Commonwealth, so that what is said above about Senate No. 1718 in that connection is relevant here. But House No. 2762 goes further than the Senate bill, as there is no exception comparable to that in Senate No. 1718 for brand owners advertising in publications circulated to the general public, and the bill covers any advertising of liquor, not just advertising of price. Thus national magazines with liquor advertisements would fall under the ban. The Court said of a comparable prohibition in *Bigelow, supra* at 828-829: "... Virginia might exert the power sought here over a wide variety of national publications or interstate newspapers carrying advertisments similar to the one that appeared in Bigelow's newspaper or containing articles on the general subject matter to which the advertisement referred. Other States might do the same. The burdens thereby imposed on publications would impair, perhaps severely, their proper functions" (footnote omitted).

*Conclusion.* For the reasons indicated, we do not render a definite answer but submit this opinion for the consideration of the Senate.

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the thirty-first day of August, 1977.

EDWARD F. HENNESSEY
FRANCIS J. QUIRICO
ROBERT BRAUCHER
BENJAMIN KAPLAN
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS

APPENDIX

## Senate No. 1718

Section 24 of chapter 138 is hereby amended by adding the following sentence: —

Provided however, all price advertising of alcoholic beverages appearing outside of a licensed premises is prohibited except such material as is visible from inside a licensed premises and such advertising as appears in publications which are circulated to the liquor trade and not to the general public, or price advertising placed by the brand owner in publications circulated to the general public.

## House No. 2762

Chapter 138 of the General Laws is hereby amended by inserting after Section 25E the following section: —

*Section 25F.*  "No person shall send or cause to be sent into the state any letter, postcard, circular, newspaper, pamphlet, order kit, order form, invitation to order, price list, or publication of any kind containing an advertisement or a solicitation of any order for any alcoholic beverages, irrespective of whether the purchase is made or to be made within or without the state, or whether intended for commercial or personal use or otherwise, unless such person shall be duly licensed hereunder to traffic in alcoholic beverages.

"No person shall issue or publish or cause to be issued or published in the state any letter, postcard, circular, newspaper, pamphlet, order kit, order form, invitation to order, price list, or publication of any kind containing an

advertisement or a solicitation of any order for any alco-
holic beverages, irrespective of whether the purchase is
made or to be made within or without the state, or
whether intended for commercial or personal use or other-
wise, unless the advertisement is placed by a person duly
licensed to traffic in alcoholic beverages in Massachusetts."