ARISTOCRATIC RESTAURANT OF MASSACHUSETTS, INC. *vs.*
ALCOHOLIC BEVERAGES CONTROL COMMISSION (No. 1)
(and a companion case[1]).

Suffolk. December 7, 1977. — March 3, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Alcoholic Beverages Control Commission. Alcoholic Liquors. Constitutional Law*, Freedom of speech, Right to assemble, Alcoholic liquors, Standing to question constitutionality. *Due Process of Law*, Vagueness of statute.

In two actions challenging decisions of the Alcoholic Beverages Control Commission suspending the plaintiffs' licenses to sell alcoholic beverages, there was no showing that either licensee had been prejudiced by inadequate notices of hearings before the commission. [551]

In two actions challenging decisions of the Alcoholic Beverages Control Commission suspending the plaintiffs' licenses to sell alcoholic beverages, there was no merit to the plaintiffs' contention that the commission exceeded its jurisdiction by enforcing a regulation of a local licensing authority. [551]

In two actions challenging decisions of the Alcoholic Beverages Control Commission suspending the plaintiffs' licenses to sell alcoholic beverages, there was substantial evidence to support the commission's findings that the plaintiffs had violated a regulation of the local licensing board by permitting entertainers to mingle with or circulate among the patrons. [552]

---

[1] The companion case is United Food Corporation *vs.* Alcoholic Beverages Control Commission.

A regulation of the Boston Licensing Board providing that "entertainers must not be allowed to mingle with or circulate among the patrons" was not unconstitutionally vague as applied to licensees who permitted entertainers to approach patrons indiscriminately and solicit them to purchase drinks. [552-553]

A regulation of the Boston Licensing Board prohibiting entertainers in an establishment serving alcoholic beverages from mingling with or circulating among the patrons did not violate the First Amendment to the United States Constitution. [553-555] LIACOS, J., dissenting.

A regulation of the Boston Licensing Board prohibiting entertainers from mingling with or circulating among the patrons did not violate art. 16 of the Massachusetts Declaration of Rights as applied to licensees who permitted entertainers to approach patrons indiscriminately and solicit them to purchase drinks. [555-557] LIACOS, J., dissenting.

In two actions challenging decisions of the Alcoholic Beverages Control Commission suspending the plaintiffs' licenses to sell alcoholic beverages for violations of a regulation of the Boston Licensing Board which prohibited entertainers from mingling with or circulating among patrons, the plaintiffs had no standing in the context of a vagueness challenge advanced under art. 16 of the Massachusetts Declaration of Rights to argue that the regulation was unconstitutional as applied to others. [557] LIACOS, J., dissenting.


CIVIL ACTIONS commenced in the Superior Court on January 26, 1976, and May 13, 1976.

Motions for summary judgment were heard by *Linscott,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Morris M. Goldings* for the plaintiffs.

*Thomas Miller,* Assistant Attorney General, for the defendant.

WILKINS, J. Each plaintiff sought judicial review under G. L. c. 30A, § 14, of a decision of the Alcoholic Beverages Control Commission (commission) suspending its license to sell alcoholic beverages. In each case, summary judgment was entered in the Superior Court dismissing the complaint. The appeals, which raise identical issues, were consolidated, and we transferred them to this court on our own motion. We affirm the judgments.

374 Mass. 547                                                        549

Aristocratic Restaurant etc. v. Alcoholic Bev. Control Comm'n (No. 1).

Aristocratic Restaurant of Massachusetts, Inc. (Aristocratic), was the holder of a 1975 all alcoholic beverages restaurant license for premises at 240 Boylston and 19 Providence streets in Boston. One night in October, 1975, two investigators of the commission entered those premises and were seated at the bar. The investigators observed that "after leaving the stage and getting dressed, the dancers mingled with the patrons and had patrons purchase drinks for them." Each of two or three dancers employed by Aristocratic asked one or the other of the investigators to buy her a drink. The investigators subsequently identified themselves to the person in charge of the premises.

About three weeks later, the commission sent Aristocratic notice of a hearing to determine whether Aristocratic "violated certain provisions of the Liquor Control Act." The notice referred to Regulation Thirteenth of the Boston Licensing Board (Regulation 13) and the commission's Regulation 21. Regulation 13 provides that "[e]ntertainment, if any, must be confined to a particular place, and the entertainers must not be allowed to mingle with or circulate among the patrons." The commission's Regulation 21 provides that "[n]o licensee for the sale of alcoholic beverages shall permit any . . . illegality of any kind to take place in or on the licensed premises."[2]

The notice of the hearing did not recite the date of the alleged violation, and the commission did not file any further specifications, although Aristocratic moved for a more definite statement. The commission had a practice of allowing a licensee's representative to read its entire file, and Aristocratic had that opportunity in this proceeding. The commission conducted a hearing on December 16, 1975; rendered a decision that day finding a violation of Regulation 13 and of its Regulation 21; and ordered a suspension of Aristocratic's license for a period of ten days. The commission filed a statement of reasons containing findings of fact.

---

[2] For the purposes of these appeals, the only "illegality" claimed by the commission was the violation of Regulation 13.

The circumstances concerning United Food Corporation (United) are much the same as those concerning Aristocratic. On January 4, 1976, investigators of the commission entered United's licensed premises on Washington Street in Boston operated under the name "Two O'Clock Lounge." A female dancer left the stage, dressed, approached the investigators, and asked them if they would like company. They asked what they would have to do for her company, and she replied, "You'll have to buy me a drink for starters." When the investigators declined the offer, she left them and approached other male patrons on the other side of the bar. The investigators identified themselves and informed the person in charge of the premises that a report of the violation of Regulation 13 would be filed with the commission.

On March 23, 1976, the commission sent a notice of a hearing to United, asserting that on January 4, 1976, United violated Regulation 13 and Regulation 21. The commission furnished no further details and, as in the case of Aristocratic, the commission declined, on motion, to make a more definite statement of its charges. But it did advise United that the licensee's complete file was open for inspection. On April 27, 1976, the commission held a hearing and, on that same day, issued a decision suspending United's license for six days for violation of Regulation 13 and Regulation 21. The commission filed a statement of reasons containing specific findings, which have been summarized in part above.

In each case, a Superior Court judge stayed the commission's order of suspension, and, after the commission's motions for summary judgment were granted, the judge allowed each appellant's motion to stay judgment pending appeal.

As we have indicated, the appellants raise identical issues in their appeals. They claim that Regulation 13 and Regulation 21 are "vague, overbroad, and in violation of constitutional rights of speech and association." Their main contentions are that a prohibition of entertainers' mingling with and circulating among patrons is too imprecise to meet con-

stitutional requirements of due process and that, in any event, such a regulation is overbroad because it denies entertainers constitutionally protected rights to speak to and associate with customers. Before reaching these constitutional questions, we shall address procedural objections raised by the appellants.

1. The unsupplemented notices of the hearings were inadequate to provide the licensees with "sufficient notice of the issues involved to afford them reasonable opportunity to prepare and present evidence and argument" (G. L. c. 30A, § 11 [1], inserted by St. 1954, c. 681, § 1), and, therefore, the commission's decisions were "[m]ade upon unlawful procedure" (G. L. c. 30A, § 14 [7] [d], as amended through St. 1973, c. 1114, § 3). However, only where "the substantial rights of any party may have been prejudiced" is a reversal of agency action appropriate. G. L. c. 30A, § 14 (7). Neither appellant has made such a showing here. The files of the commission, including reports of the violations claimed by its investigators, were available to each licensee. Indeed, the record of each proceeding indicates that counsel was adequately prepared to meet the evidence presented before the commission and that in neither case did he ask for a continuance.[3]

2. There is no merit to the appellants' argument that the commission exceeded its jurisdiction by enforcing a regulation of a local licensing authority. They claim that the commission lacks the power to make an initial interpretation of such a regulation on its own. The appellants concede, however, that the commission has comprehensive powers of suspension over licensees and has statutory authority (G. L. c. 138, § 64) to revoke or suspend a license for violation of a regulation of a local licensing authority. Nothing in the legislative pattern of regulation suggests that the commission may enforce only those local regulations which have been interpreted by a local licensing authority.

---

[3] If the commission has not already modified its practice to conform to the requirements of the State Administrative Procedure Act (G. L. c. 30A), it should do so.

3. There was substantial evidence to support the commission's findings of fact. In each case, the evidence showed, and the commission found, that at least one entertainer approached customers on the licensed premises and attempted to have them purchase her drinks. This evidence supported findings that entertainers mingled with or circulated among the patrons. The evidence warranted an inference that the management of the licensed premises "allowed" entertainers to associate with patrons in this manner. Thus, the finding of a violation of Regulation 13, and in turn of Regulation 21, was amply supported by substantial evidence. We consider next the appellants' claim that the suspensions of their licenses cannot stand because Regulation 13 and Regulation 21 are unconstitutional.

4. Regulation 13 and Regulation 21 are not unconstitutionally vague as applied to the appellants in the circumstances revealed by the commission's findings. The appellants, therefore, have no standing to challenge these regulations on due process grounds by showing that the regulations may be facially vague, that is, impermissibly vague in other factual circumstances. See *Commonwealth* v. *Gallant*, 373 Mass. 577, 581 (1977), and cases cited; *Broadrick* v. *Oklahoma*, 413 U.S. 601, 607 (1973).[4] The question is whether the licensees had sufficient warning, and the enforcement authorities had sufficient guidance, from Regulation 13 to determine whether the conduct of the licensees' entertainers was forbidden. See *Commonwealth* v. *Bohmer, ante* 368, 371-372 (1978); *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 383-384 (1976). We believe that where an entertainer indiscriminately approaches patrons soliciting them to purchase drinks for him or her, the entertainer has "mingle[d] with or circulate[d] among the patrons." These words are not vague in the context of the facts

[4] Regulation 21 is involved here, as we have noted, only to the extent that the "illegality" is a violation of Regulation 13. In our opinion in a case with the same name, *post* 564 (1978), released today, we hold that "illegality" is not impermissibly vague, if construed to apply only to violations of statutes and regulations.

apparent on the record. Even if Regulation 13 were to be considered a criminal statute, and thus held to a higher standard of certainty than a civil sanction (*Winters* v. *New York*, 333 U.S. 507, 515 [1948]), it furnishes a sufficiently definite warning so that people of common intelligence would know that the activities of the appellants' entertainers constituted mingling with and circulating among patrons. See *Commonwealth* v. *Gallant, supra* at 580-581; *Commonwealth* v. *707 Main Corp., supra* at 383-384. See also *Miami* v. *Kayfetz*, 92 So. 2d 798, 802 (Fla. 1957); *New Orleans* v. *Kiefer*, 246 La. 305, 312 (1964) (holding that the verb "mingle" has a clear connotation to the ordinary mind); *People* v. *King*, 115 Cal. App. 2d Supp. 875, 879 (1952) (same).

5. The appellants argue that Regulation 13 infringes on constitutional rights of free speech and association.[5]

The claim that Regulation 13 violates any right of freedom of speech or assembly under the First Amendment to the Constitution of the United States must fail. The Supreme Court has recognized the right of the States, under the Twenty-first Amendment, to exercise controls on the exercise of First Amendment rights in establishments dispensing liquor in situations where such restraints would be unacceptable elsewhere. *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922, 932-933 (1975). See *Commonwealth* v. *Sees, ante* 532, 536 (1978); *California* v. *LaRue*, 409 U.S. 109, 114-116 (1972). If the nude dancing considered in the *LaRue* case could be regulated by the State as part of its control over licensed liquor establishments, we think that Regulation 13's controls over the conduct of entertainers who are not performing do not run afoul of the First Amendment. The appellants' constitutional arguments must rest exclusively on the Constitution of the Commonwealth.

Although the appellants make no specific reference to art. 16 of the Declaration of Rights of the Constitution of

[5] Regulation 13 by its terms forbids only conduct. However, its prohibition does include an element of restraint on speech in that by forbidding mingling and circulating it indirectly prohibits oral communication.

the Commonwealth, as amended by art. 77 of the Amendments, which guarantees freedom of speech, we must consider art. 16. The protection of freedom of speech afforded by art. 16 certainly extends to the communication of ideas. Because our State Constitution has no special provision like the Twenty-first Amendment concerning the regulation of alcoholic beverages, the right of free speech guaranteed by art. 16 has no parallel limited status in premises where alcoholic beverages are served. In *Commonwealth* v. *Sees, supra* at 536, decided today, we hold that an attempted regulation of nearly nude dancing in a licensed liquor establishment violated art. 16 because the performance was protected expression. However, we find no expressive conduct in the activities engaged in by the entertainers in this case. The entertainers were not acting as entertainers or otherwise engaged in expressive conduct.

A restriction of entertainers' soliciting drinks from customers in liquor establishments serves a significant governmental interest. The random solicitation of drinks often implies the availability of some service, at least the entertainer's company, in return. The entertainer is normally acting with the knowledge and approval of his or her employer. Indeed, in many instances such activity may be a requirement of the job. Although some patrons may be "willing victims" of such activity, others may not be. It would be naive not to recognize that the solicitation of drinks is often a prelude to the solicitation of a customer to engage in sexual activity.[6] Where the speech claimed to be protected is carried on solely for profit, where the information transmitted is inconsequential, and where the government's interest in regulating the activity with which such speech is associated is significant, we believe the prohibition by Regulation 13 of the solicitation of drinks to be appropri-

---

[6] We note, but need not determine on the facts of this case where the actual solicitation of drinks is shown, that a prohibition of entertainers' indiscriminate solicitation of drinks may be enforceable effectively only by prohibiting entertainers from mingling with and circulating among patrons.

374 Mass. 547 555

Aristocratic Restaurant etc. *v*. Alcoholic Bev. Control Comm'n (No. 1).

ate in time, place, and manner. *Opinion of the Justices,* 373 Mass. 888, 891 (1977). *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 770-771 (1976). See *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 68-69 (1976). Thus, we conclude that art. 16 does not assure a constitutional right, in the name of free speech, to hustle drinks. Certainly, art. 16 does not grant licensees a right to have their entertainers solicit drinks from customers. Therefore, as applied to the facts of these cases, Regulation 13 infringed no art. 16 rights of the appellants or their entertainers.

Although the facts of these cases present no circumstances of speech or expressive conduct protected by art. 16, the appellants assert that Regulation 13 is unconstitutionally vague and overbroad and argue that, in a free speech context, they may rely on hypothetical circumstances to challenge the propriety of the regulation. In particular circumstances, a person may have standing to advance overbreadth arguments, based on hypothetical facts, where First Amendment rights are involved. See *First Nat'l Bank* v. *Attorney Gen.,* 371 Mass. 773, 787-788 (1977), and *Commonwealth* v. *Dennis,* 368 Mass. 92, 95 (1975), each citing *Broadrick* v. *Oklahoma,* 413 U.S. 601, 611-615 (1973). The appellants have no standing, however, in the context of a vagueness challenge to argue that Regulation 13 is unconstitutional as applied to others. *Commonwealth* v. *Bohmer, supra* at 371 n.6. *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 58-59 (1976). *Broadrick* v. *Oklahoma, supra* at 608.

This court has never discussed the permissible scope or the availability of overbreadth arguments advanced exclusively under art. 16.[7] We believe that a person may assert the rights of others under art. 16 to challenge the constitu-

---

[7] Individual Justices of this court have accepted the availability of an overbreadth argument under art. 16. See Justice Kaplan, dissenting in part, joined by Chief Justice Tauro, in *Revere* v. *Aucella,* 369 Mass. 138, 149-150 (1975); Justice Kaplan and Justice Liacos, concurring, in *Commonwealth* v. *Sees, supra* at 538 (1978).

tionality of government action in a manner similar to that in which overbreadth arguments have been advanced under the First Amendment. But, to have standing to assert a facial overbreadth argument, a party must demonstrate both that the challenged governmental regulation is not susceptible of a construction which limits its application to unprotected activity and that the deterrent effect of any government regulation is both "real and substantial." *Commonwealth* v. *Bohmer, supra* at 374. *Young* v. *American Mini Theatres, Inc., supra* at 60. *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 216 (1975).

The appellants lack standing to invoke the overbreadth doctrine here. They have not shown that the operation of Regulation 13 imposes a real and substantial deterrent to the exercise of rights protected by art. 16. They offered no evidence to support such a claim, and their briefs do not suggest any hypothetical set of facts which would support a claim of the facial invalidity of that regulation. We decline to pass on the appellants' general assertion of overbreadth, unsupported by specific argument. If and when such argument is made, the government will have the opportunity to contest the overbreadth claim. In doing so, the government may argue that, in the circumstances, Regulation 13 should be construed to be inapplicable to the hypothetical situations posited or that, if Regulation 13 does restrict any art. 16 rights, those restrictions are limited reasonably in time, place, and manner to serve the State's significant interest in the regulation of conduct. See *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 63 n.18 (1976). See also *Tahiti Bar, Inc. Liquor License Case,* 395 Pa. 355, 372, appeal dismissed sub nom. *Tahiti Bar, Inc.* v. *Pennyslvania Liquor Control Bd.,* 361 U.S. 85 (1959). In addition, speech involved in the circumstances to which Regulation 13 applies often may be solely commercial in purpose, engaged in as part of an entertainer's employment. In such cases, "the notion of 'overbreadth' appears inapposite, so that each litigation will be decided by reference to the particular impact of the given legislation or administrative regulation on the par-

ties, not on a consideration of the range of the restraints that could be threatened under it." *Opinion of the Justices,* 373 Mass. 888, 892 (1977). See *Bates* v. *State Bar of Ariz.,* 433 U.S. 350, 380-381 (1977).

Although the appellants claim that their entertainers have a constitutional right to associate with patrons of their establishments, they offer no reasoning or authority in support of that asserted right nor in support of their standing to advance it. In addition, the appellants assert no constitutional right of their own or of their customers to have their entertainers mingle with customers. Article 19 of the Declaration of Rights of the Constitution of the Commonwealth gives the people the right "in an orderly and peaceable manner, to assemble . . . ." But art. 19 does not extend to the appellants any greater standing in the circumstances than does art. 16.

*Judgments affirmed.*

LIACOS, J. (dissenting). I respectfully dissent from part 5 of the majority opinion. The plaintiffs adequately have raised the issue of the overbreadth of Regulation 13 and have presented sufficient argument to allow us to reach a determination of that question. I conclude that the regulation imposes a real and substantial deterrent to the exercise of rights protected by arts. 16 and 19 of our Declaration of Rights, and that we cannot ensure the protection of those rights by interpreting the regulation so as to limit its application to unprotected activity. Under this view, the plaintiffs simultaneously satisfy the requirements for establishing standing to assert the overbreadth claim and for succeeding on the merits of that claim.

Regulation 13 provides, in part, that entertainers in establishments subject to the jurisdiction of the Boston Licensing Board "must not be allowed to mingle with or circulate among the patrons." I agree with the court's conclusion that this language is not vague. The defendant commission sets

forth in its argument the definition of "mingle": "[t]o associate or unite, . . . to join in company," and the definition of "circulate": "to move, pass, or go around freely from person to person or from place to place." The plaintiffs argue that to "mingle" is to "become closely associated; join or take part with others." While mingling or circulating thus encompasses a wide variety of interpersonal associations implicating such activities as speaking or listening, it cannot be said that a person of common intelligence would be unable to understand the meaning of the regulation. To the contrary, the regulation clearly proscribes any kind of off-stage association or dialogue between an entertainer and a patron. What remains to be determined is whether such a broad regulation impermissibly impairs the exercise of protected rights of speech or association.

As a preliminary matter, the majority opinion briefly inquires into potential sources of rights of an associational or expressive nature. The usual source of such rights, the First Amendment to the United States Constitution, is found to be inapplicable to this case because of the Twenty-first Amendment and the holdings of the Supreme Court in *Doran* v. *Salem Inn, Inc.*, 422 U.S. 922 (1975), and *California* v. *LaRue,* 409 U.S. 109 (1972). I think such a conclusion is premature and, perhaps, unwarranted.[1] The majority opinion goes on to recognize, however, that art. 16 of the Declaration of Rights of the Constitution of the Commonwealth[2]

---

[1] The type of speech or conduct encompassed by the term "mingling" must surely be distinguished from the "bacchanalian revelries" subject to regulation in *LaRue.* 409 U.S. at 118. Moreover, the Supreme Court has repeatedly rejected the broad proposition that the First and Fourteenth Amendments are inapplicable to liquor establishments within the umbrella of the Twenty-first Amendment. *Id. Doran* v. *Salem Inn, Inc.*, 422 U.S. at 932. See *Opinion of the Justices,* 373 Mass. 888 (1977). The "mingling" issue was not passed on directly by the Supreme Court in either *LaRue* or *Doran.*

[2] "*Article* XVI. The liberty of the press is essential to the security of freedom in a state: it ought not, therefore, to be restrained in this commonwealth. The right of free speech shall not be abridged." (As amended by art. 77 of the Amendments.)

provides an independent source of rights similar in scope to portions of the First Amendment and not affected by a qualifying provision analogous to the Twenty-first Amendment. See *Commonwealth* v. *Sees, supra*. Although the plaintiffs in their briefs refer repeatedly to their rights of speech and association under the State as well as Federal Constitution, they make no specific reference to art. 16. I agree with the majority that this oversight should not bar our consideration of the important constitutional issues presented under art. 16, but I should think that the same considerations would apply with equal force to art. 19 of the Declaration of Rights of the Constitution of the Commonwealth.[3] The cursory analysis of art. 19 by the majority appears inconsistent with their extended discussion of art. 16. Such disparate treatment seems to me unneccessarily to postpone elucidation of a previously uncharted area that has been put directly in issue in the instant case.

Grounding their analysis solely on art. 16, the majority preliminarily conclude that the activities engaged in by the entertainers in this case did not involve "expressive conduct." The opinion goes on, however, to consider the "significant governmental interest" involved in the suppression of the entertainers' activities, as well as to introduce elements of "time, place, and manner" and "commercial" speech doctrines. Invocation of these analytical tools strongly suggests that certain individual rights of speech and association, other than the right to expressive conduct, have survived the majority's preliminary analysis and are being weighed against the governmental interests. If no such individual rights had survived, the State could impose any rational form of regulation within the bounds of other constitutional prohibitions, and reference to higher standards of State justification or to free speech doctrines would be un-

---

[3] "Art. XIX. The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good: give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer."

necessary. See, e.g., *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 60-61 (1973). However, the nature of the surviving individual rights is not made explicit in the opinion, thereby confusing rather than clarifying the scope of art. 16.

Additionally, countervailing governmental interests identified by the majority are deduced by means of what I view as a questionable exercise of judicial notice. Without basis in the record, the majority find that: (1) the solicitation of drinks implies that the entertainer is making some "service" available, (2) solicitation and the provision of such a service are encouraged or even required by the employer (thereby presumably transforming the activity from private conduct to commercial conduct), and (3) the whole process is a prelude to, or pretense for, solicitation to engage in sexual activity. Moreover, the majority's ultimate conclusion — that there is a significant governmental interest in preventing the solicitation of drinks — appears to be based substantially on the rationale that upholding a blunderbuss attack on constitutionally protected interests will prevent the escalation of such activity to more dangerous or undesirable conduct. I am not willing to embrace the general proposition that the State may anticipate criminal conduct and stop it from developing by imposing restrictions on activities that implicate constitutional rights of free speech or association.

The State arguably can regulate or prohibit the solicitation, or "hustling," of drinks by employees of a licensed establishment; such solicitation may not be the type of speech or association that is protected under art. 16 or art. 19. The State could prohibit solicitation for prostitution, sales above legal maximum prices, misleading and unlawful trade practices (cf. G. L. c. 93A), and a variety of other unlawful acts, all of which is conceded by the plaintiffs. The regulation in question does not, however, provide that "entertainers must not be allowed to solicit drinks from patrons." Regulation 13 provides that "entertainers must not be allowed to mingle with or circulate among the patrons." This fact requires that the plaintiffs' overbreadth claim be closely examined, and it is on this point that I find myself most seriously in disagreement with the majority.

As a matter preliminary to a discussion of the overbreadth question, it is important to address specifically the intimation in the majority opinion that the regulation is directed to "commercial" speech or conduct. This is clearly not the case, as a few examples will demonstrate. Between performances at the Two O'Clock Lounge, a performer might wish to join a group of friends engaged in a conversation regarding the recent rulings of this court on the subject of nude dancing or mingling. Regulation 13, on its face, prohibits such activity. The same prohibition would apply to Pete Seeger, the late Phil Ochs, or any other entertainer who accepts an engagement at the Two O'Clock Lounge or other establishment under the jurisdiction of the Boston Licensing Board. There is absolutely no basis for assuming that all forms of speech or association undertaken by one who entertains at a licensed establishment are directed at furthering commercial interests, and no such showing has been made in this case. The fact that a discussion takes place in a bar or a restaurant does not automatically transform that discussion into commercial speech.

The plaintiffs clearly and forcefully advance the overbreadth argument at several points in their brief and reply brief. They attack Regulation 13 as being overbroad in that it does not "define an offense which the licensees may distinguish from constitutionally protected conduct such as speech and association of their employees with their customers." The majority opinion explicitly recognizes the availability of an overbreadth attack in furtherance of rights protected by art. 16, and indicates that the overbreadth doctrine under art. 16 is "similar" to that developed by the Supreme Court in the First Amendment area. Nevertheless, the majority conclude that these plaintiffs lack standing to invoke the overbreadth doctrine, and provide three reasons for this conclusion.

The first reason given is that the plaintiffs have not shown that Regulation 13 imposes a "real and substantial" deterrent to the exercise of art. 16 rights. This is, I believe, the most substantial reason, and discussion of it is deferred mo-

mentarily. The second reason is that the plaintiffs have offered no evidence to support the overbreadth claim. The theory underlying the First Amendment facial overbreadth doctrine was succinctly stated in *Broadrick* v. *Oklahoma,* 413 U.S. 601, 612 (1973): "Litigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a *judicial prediction or assumption that the statute's very existence* may cause others not before the court to refrain from constitutionally protected speech or expression" (emphasis added). Under such a view, it is difficult for me to imagine what kind of "evidence" the majority fault the plaintiffs for not introducing. Surely, the plaintiffs need not "prove" that others not before the court are inhibited from exercising their constitutional rights by the broad language of Regulation 13. What purpose could be served by introducing the testimony of an entertainer that a prohibition on mingling with patrons makes it difficult to associate or speak with the patrons?

The third reason given by the majority is that the plaintiffs have not suggested in their briefs any hypothetical set of facts that would support their overbreadth claim and have not made specific argument on the subject. In my view, the plaintiffs' briefs very adequately suggest the general nature of the problem, and it takes no great leap of imagination to construct hypothetical sets of facts or examples such as I have offered above.

I return now to the first reason stated by the majority for holding that these plaintiffs do not have standing to invoke the overbreadth doctrine — that they have not shown that Regulation 13 imposes a "real and substantial" deterrent to the exercise of rights protected by art. 16. This standard, employed by the majority to reject the plaintiffs' standing, is identical to the standard applicable to a decision on the merits of the overbreadth claim. In other words, had the plaintiffs shown a "real and substantial" deterrence, they would at once have established standing and prevailed on the merits. The "real and substantial" standard was announced by the Supreme Court in *Broadrick:* "[P]articular-

374 Mass. 547                                           563

Aristocratic Restaurant etc. *v.* Alcoholic Bev. Control Comm'n (No. 1).

ly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." 413 U.S. at 615. It is not apparent to me that the *Broadrick* standard is applicable here where the prohibition against mingling "directly" affects rights of "pure" speech and association. (Compare the majority opinion at n.5.) Assuming that it does apply, I think the deterrent effect of Regulation 13 is clearly real and substantial.[4] The terms "mingle" and "circulate" potentially implicate rights of expression and association; Regulation 13 applies to all licensed establishments where entertainment is provided; the regulation is in effect at all times that the establishment is open for business; and the penalties for violating the regulation are severe. The majority provide no analysis to justify a conclusion that the operation of Regulation 13 imposes no real or substantial deterrent to the exercise of art. 16 or art. 19 rights.

A conclusion that a statute or regulation sweeps within its literal meaning protected expression does not generally require that the statute or regulation be struck down. The preferred course, when possible, is to construe the statute or regulation so as to narrow its impact and avoid interference with protected rights. See *Commonwealth* v. *Bohmer, supra* at 374 (1978); *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 60 (1976). I do not understand the majority opinion as having attempted any such narrowing of the sweep of Regulation 13. Moreover, I doubt whether any narrow construction of the words "mingle" or "circulate" could be judicially provided without involving this court in what would be essentially a legislative task.

I would hold the regulation facially overbroad. Therefore, I dissent.

---

[4]*Broadrick* does not define the term "substantial" in the context in which it is used, nor do subsequent Supreme Court cases clarify the situation. The term could have a variety of meanings.